No. 39,150

FRANK EMERY, *Appellee*, v. HARRY GRABER, Individually, and HARRY GRABER doing business as BLACK CAT SAND COMPANY, *Appellant*.

(268 P. 2d 950)

Opinion filed April 10, 1954.

*Waldo Wetmore*, and *Roy L. Rogers*, both of Wichita, argued the cause, and *Z. Wetmore*, and *Joe T. Rogers*, both of Wichita, were with them on the briefs for the appellant.

*Robert Martin*, of Wichita, argued the cause, and *George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., George Siefkin, George B. Powers, John F. Eberhardt*, and *Robert M. Siefkin*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by plaintiff (appellee) against defendant (appellant) to cancel a contract to dig a lake and to enjoin the assertion of rights thereunder. The trial court made findings of fact and conclusions of law, rendered judgment for the plaintiff, and defendant appeals.

Plaintiff's petition consists of two causes of action. In his first cause of action he seeks to establish that the oral contract under which defendant was removing sand from plaintiff's land had been revoked, and by the second cause of action the plaintiff sought to

establish that a written agreement between the parties was not a contract, had not been delivered, was obtained by defendant through fraud and without consideration, and had been fraudulently altered and recorded by defendant.

Defendant's demurrer to plaintiff's petition was overruled and defendant answered by way of general denial, except as to certain allegations which were either admitted or qualified. Plaintiff replied by general denial. A jury was waived and the case was tried by the court. To certain evidence presented by the plaintiff concerning the execution of the written instrument in question, defendant objected. At the close of plaintiff's evidence, defendant filed a motion to strike certain oral testimony and demurred to plaintiff's evidence on the ground it failed to show a cause of action in favor of plaintiff, both of which were by the trial court overruled. Defendant then proceeded with his evidence. At the close of the case the court made findings of fact and conclusions of law. The pertinent facts are summarized as follows:

Plaintiff was the owner of 100 acres of land located south of Wichita bordering on the Arkansas river. In February, 1951, defendant orally agreed to dig a lake from one to three acres in size for plaintiff on what was known as a garden spot. In consideration for creating the lake the defendant, who was engaged in the sand business, was to receive free of any cost the sand removed from the lake site. In further consideration, defendant was to build a dike to prevent the intrusion of surface water; an all-weather road around the lake, and to do such landscaping as would be necessary to put the premises in an attractive condition. Pursuant to this oral agreement, defendant commenced operations to build the lake. On March 10, 1951, plaintiff and his wife were at the union station at Wichita ready to board a train to attend a medical meeting in Louisiana. Defendant met them at the station with a prepared document which he said was a contract covering his operations on the land, and asked that they sign it. Plaintiff refused, stating that he did not have time to investigate or consider the matter, and did not want to make a written contract with defendant before doing so. Defendant stated the paper would amount to nothing and if plaintiff would sign, he (defendant) would use it to assure prospective customers or contractors in the Boeing Aircraft area that he had a source of supply for sand during the time plaintiff was out of town, and that was the only purpose for which he would

use it. Defendant suggested that plaintiff sign and deliver the agreement to plaintiff's sixteen year old son, Frank, Jr., who was with plaintiff at the station but was remaining in Wichita; that during his absence defendant would pick up the agreement from the son, only if he needed it for the purpose indicated, and that he would return the agreement to plaintiff when he came back from his trip in about ten days. With this understanding, plaintiff and his wife signed the document and delivered it to their son. Defendant did not sign either the original or the copy of the agreement. Three or four days later, defendant went by the plaintiff's home while he and his wife were still out of town and picked up the agreement from plaintiff's son. The agreement reads as follows:

"THIS AGREEMENT, made and entered into this 10th day of February, 1951, by and between Frank Emery and Nellie M. Emery, his wife, parties of the first part, and Harry Graber, party of the second part, Witnesseth:

"The parties of the first part, in consideration of the agreement hereinafter contained on the part of the party of the second part, give and grant to the party of the second part, for a period of three years from this date, the privilege of removing sand and other material from the land described as follows: (legal description)

"In consideration of the above agreement on the part of the parties of the first part, the party of the second part agrees to remove said sand and material from said land for a period of three years and to build a lake on said land, and to build up and leave a levee around the entire excavated part of said land to keep out ordinary flood waters, and when through with excavating, to level off the part not excavated so as not to leave any unsightly hills and holes around the lake to be so created."

Not only was the mentioned agreement unsigned by defendant, but the description of the land contained therein included the 100 acres owned by plaintiff, and also other properties that did not belong to him. Moreover, after the defendant had obtained the agreement from plaintiff's son, as aforementioned, he signed and acknowledged it before his attorney on June 23, 1951, and filed the same of record in the office of the register of deeds on June 25, 1951. The instrument was never acknowledged by the plaintiff, and he was not advised by defendant of his execution and recording of the instrument.

In May, 1951, plaintiff complained to defendant in a telephone conversation that he had not returned the agreement he had obtained from plaintiff's son. Defendant then stated he could have the agreement at any time. Immediately after the recording of the instrument, defendant entered into a contract with The Western

Contracting Corporation under which he gave them the exclusive right to remove sand from all the lands described in the aforementioned agreement, whereby defendant was to receive a royalty of ten cents per cubic yard for all material removed. The Western Contracting Corporation was engaged in building the concrete ramps and runways on the B-47 Air Base in Wichita which required vast quantities of sand. Plaintiff's land was so situated that between fifteen and twenty acres of it could be cleared and the sand used. As a result, the contracting firm moved in power equipment and stripped almost the entire area to a depth of fifteen or twenty feet. Prior to the commencement of these operations by The Western Contracting Corporation, defendant had not done any landscaping or filling, and had failed to build a road or levee around the garden spot and, as a result of the contracting company's operations, that work cannot now be done, and since the execution of the contract between defendant and The Western Contracting Company, he has placed himself beyond the power to perform his contract with the plaintiff.

The trial court found the fraudulent acts of the defendant consisted of his subsequent signing of the mentioned agreement, procuring the acknowledgment of his signature thereto on June 23, 1951, placing the same of record in the office of the register of deeds, and in the execution of the contract by him with The Western Contracting Company. The trial court concluded as a matter of law that the plaintiff and defendant had entered into a valid oral contract wherein the defendant was to remove sand from what is known as the garden spot on plaintiff's land, and create a small lake of from one to three acres in size, to build a road around it and landscape it, for which the defendant was to receive in return the sand therefrom; that the defendant breached the terms of the oral contract, and plaintiff filed the action electing to terminate it, and further concluded there was no consideration given by defendant to plaintiff for the written agreement, and that it was entered into under mutual mistake of fact as to the property covered, as it was intended to cover only the one to three acre lake, and that the agreement was therefore void. The court concluded defendant had no interest in the property in question, and judgment should be entered quieting the title in the plaintiff.

Defendant's motion for a new trial was overruled and he appeals. Although defendant listed thirteen specifications of error, his argument is based on two propositions, the first being that the trial court

erred in overruling his demurrer to the petition, in that plaintiff's first cause of action was insufficient because he pleaded that the oral agreement between plaintiff and defendant was a license and, therefore, was revocable at the will of the plaintiff, when in fact the agreement was more than a license. It was defendant's contention that the agreement was a mining lease or a *profit a prendre,* the same as an oil and gas lease. We find no merit in defendant's contention. While the petition is quite lengthy and contains irrelevant matter, it clearly states a simple oral contract whereby defendant agreed to dig a lake of from one to three acres on plaintiff's land, encircle it with a road and landscape it, in consideration for the sand taken therefrom, and that the defendant breached his oral contract by failing to perform, and by entering into a subsequent contract with The Western Contracting Company whereby defendant made it impossible for him to perform. By reason thereof, the contract should be canceled and the defendant ousted from plaintiff's land. The second cause of action made certain allegations of the first cause of action a part thereof and, in substance, alleged that the defendant fraudulently secured the written agreement on the representations it would be used only for certain purposes while the plaintiff was out of town on a ten-day trip, and that it would be returned to plaintiff when he came back, and that the contract was without consideration, all as hereinbefore summarized in the trial court's findings, and asked that the contract be declared void for the reasons therein set forth. It would serve no useful purpose for us to set forth in detail the allegations in plaintiff's petition as contained in the two causes of action. Suffice it to say that we have examined the petition and find it sets forth sufficient facts to constitute a cause of action against defendant.

Defendant contends the petition stated no cause of action based upon fraud. It is his position that the petition failed to allege defendant had no intention of using the memorandum for the purpose of securing a favorable contract with Boeing, which fact was insufficient to state a cause of action in fraud. We cannot agree with defendant's contention. Plaintiff's petition in this regard, after alleging the meeting at the union station, and the conversation wherein defendant explained the only purpose for which the agreement would be used reads as follows:

". . . Plaintiff alleges that all of the statements made by defendant to plaintiff as alleged in the next preceding paragraph were believed and relied upon by the plaintiff and his wife, but that such statements were false and

known by the defendant to be false and were *made for the purpose of cheating and defrauding the plaintiff,* as will hereinafter more fully be made to appear." (Italics supplied.)

Surely the defendant cannot seriously contend this is an insufficient allegation of fraud. We have no difficulty in holding that this language is entirely adequate to allege fraud against defendant in the execution of the agreement.

Defendant's second and main contention is that the trial court erred in admitting oral testimony to show agreements, statements and promises regarding the subject matter of the written agreement. He contends it is a general rule of law that whenever an agreement is clear and unambiguous upon its face, parol testimony is not admissible to alter, contradict or change the terms of the contract, and cites authorities to sustain that contention. However, this rule has certain exceptions. In *Rice v. Rice,* 101 Kan. 20, 165 Pac. 799, we held in a foreclosure suit between the immediate parties to the note and mortgage, parol evidence is always admissible to show a failure of consideration or that the note and mortgage were given merely as accommodation to the payee. In *Bartholomew v. Fell,* 92 Kan. 64, 139 Pac. 1016, we held that as between the original parties to a written instrument, the rule excluding parol evidence in contradiction of the written agreement is not infringed by proof that the instrument was never delivered, or was delivered to take effect only upon the happening of some future event, and at page 67, we said:

"The plaintiff insists that the evidence offered by the defendant violates the rule that parol testimony is not admissible to contradict a written instrument. We do not understand that the evidence was offered for the purpose of contradicting the instrument itself, but only for the purpose of showing that it was not in fact delivered, and, therefore, never became a binding contract."

(See, also, *Greenleaf State Bank v. Monteith,* 173 Kan. 799, 802, 252 P. 2d 621; *Malir v. Maixner,* 174 Kan. 26, 28, 254 P. 2d 282, and cases cited therein.) The rule excluding parol evidence in contradiction of a written instrument presupposes the existence of such an agreement. Consequently, between the immediate parties to the instrument, the rule is not infringed by proof of the want of due execution of the instrument by reason of the fact that it was never delivered, or was delivered to take effect only upon the happening of some future event and not to become a binding contract between the parties. (*Malir v. Maixner,* supra.)

Under the evidence and findings of the court in the instant case, it is disclosed that at the time plaintiff signed the agreement the defendant's signature did not appear thereon, and it was not delivered to the defendant but to the plaintiff's son at the suggestion of defendant that he would only use it during the absence of plaintiff if it was necessary to show the Boeing representatives he had a source of sand supply, and that the contract would be returned to plaintiff's possession upon his return to the city. This did not amount to a delivery of the contract to the defendant which would give him the right to later sign and have the contract acknowledged by himself and placed of record for the purpose of entering into a contract with The Western Contracting Company to take from fifteen to twenty acres of sand from plaintiff's land. Lack of delivery can be and, of necessity, is often established by parol evidence and the question of what constitutes delivery is largely a matter of intention, the usual test being whether the grantor by his words or acts, or both, manifested an intention to make the instrument his deed or agreement and place it in the hands of his grantee beyond his control. (*Wuester v. Folin*, 60 Kan. 334, 337, 56 Pac. 490; *Doty v. Barker*, 78 Kan. 636, 97 Pac. 964; *Sample v. Reed*, 130 Kan. 524, 531, 287 Pac. 614; *Poteet v. Knappenberger*, 139 Kan. 534, 31 P. 2d 1003.) Defendant argues that these cases deal only with deeds and do not deal with bilateral contracts. True, but certainly the same rule applies to written instruments of this type as well as deeds. 32 C. J. S. 937, Evidence, § 977(b), reads as follows:

"Delivery of a deed or other written instrument is the final act of the parties by which the party executing the instrument puts it into the possession of the other party, both intending thereby to make it operative and binding; but it is not a part of the contract and is not proved by it. While the intent and purpose thereby to make the instrument effective is generally inferred from the act thus changing the custody, or from the fact that the party to whom it purports to be executed has it in his possession, this may be explained and rebutted by parol evidence, and declarations of intentions connected with the execution and delivery and the circumstances attending the same may properly come in as part of the *res gestae.*"

(See, also, 20 Am. Jur. Evidence, §§ 1094, 1095.)

It is clear in this case that the plaintiff did not intend to execute a valid contract such as the instrument in question, that it was to be used for only one purpose, *i. e.*, to satisfy prospective customers of the defendant of a source of sand supply, and was to be returned

to plaintiff. The trial court did not err in admitting the parol testimony.

In conclusion, the findings of fact made by the trial court were supported by substantial, competent evidence. Therefore, under the rule prevailing in this jurisdiction (*Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209; *Shotzman v. Ward,* 172 Kan. 272, 279, 239 P. 2d 935; *In re Estate of Jones,* 174 Kan. 506, 514, 257 P. 2d 116; *In re Estate of Davis,* 175 Kan. 107, 259 P. 2d 211; 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 507; West's Kansas Digest, Appeal and Error, § 1010[1]), such findings must be regarded as conclusive and will not be disturbed on appellate review.

The judgment is affirmed.