No. 40,841

KENNETH B. WHITE, *Appellant,* v. FRED WHITE, *Appellee.*

(326 P. 2d 306)

 Opinion
filed June 7, 1958. 

*Don W. Noah,* of Beloit, argued the cause, and *Ralph H. Noah,* of Beloit, was with him on the briefs for the appellant.

*Eugene H. Linville* and *C. L. Clark,* both of Salina, argued the cause, and *James P. Mize* and *Thomas M. Lillard, Jr.,* both of Salina, and *Lemoin A. Willett,* of Beloit, were with them on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action between son (Kenneth B. White) and father (Fred White) for the dissolution of an alleged partnership. After a full and complete trial, submitted solely on the issue of partnership by stipulation, the district court found that the defendant father was the sole and separate owner of the involved business, that no partnership business had ever been carried on between the plaintiff son and the defendant and rendered judgment accordingly. The plaintiff appeals from that judgment.

The pleadings are not in question and for that reason require little attention.

It suffices to say that, for purposes here involved, the petition alleges that plaintiff had worked at the father's place of business continuously after 1920; that on August 1, 1936, plaintiff and defendant entered into an oral partnership arrangement; that subsequently and on February 4, 1938, such parties reduced part of their partnership arrangement to writing, and contains extended recitals setting forth plaintiff's version of the relationship existing between the parties under and by virtue of the alleged agreements.

All that need be said respecting the answer, which was duly verified, is that it denies the existence of any partnership arrangement whatsoever and, by other allegations, joins issue on all claims made by the plaintiff in the petition respecting the creation of any such business relationship by either oral or written agreement.

At the close of a spirited trial the court, as the parties had previously stipulated, proceeded to determine the sole issue submitted on the basis of findings of fact and conclusions of law determinative

of whether or not plaintiff and defendant were partners. Such findings and conclusions are so comprehensive and in such form that they can be used to serve the dual purpose of giving a bird's-eye view of the complicated factual picture, disclosed by a long and tedious record, as well as the trial court's version of the essential facts established by the evidence and for that reason should be quoted at length. They read:

## "FINDINGS OF FACT

"1. Fred White, the defendant, is 82 years of age. He has been a resident of Mitchell County, Kansas, for more than fifty years last past.

"Kenneth B. White, the plaintiff, is 54 years of age, and has been a resident of Mitchell County, Kansas, throughout his life.

"2. The defendant is now, and has been engaged in the business of merchandising hides, furs, wool, and reclaimed metals for some forty years last past.

"3. The plaintiff worked with his father in said business from about the year 1920 until on or about April 6, 1956.

"4. During the course of plaintiff's working in said business he was authorized and did draw checks on defendant's account in The First National Bank of Beloit, Kansas, for many years last past. The plaintiff drew checks on said account to pay his personal living expenses and to acquire motor vehicles as his personal property. The plaintiff drew a check on said account for the purchase of his residential property in Beloit, Kansas.

"5. During the year 1937 and subsequent years the plaintiff was the owner of a pickup truck which was used incident to the plaintiff carrying on his duties in said business. The pickup truck was purchased by the plaintiff drawing a check on the defendant's bank account. Title thereto was taken in the name of the plaintiff.

"6. The defendant applied to the corporation commission of the State of Kansas for a private carrier permit late in the year 1937 or early in the year of 1938. A private carrier permit was granted on defendant's application in the name of Fred White and Son. The application was made under the style of Fred White and Son.

"7. The corporation commission required the filing of a partnership agreement as a prerequisite to granting such permit.

"8. A document was executed in the year 1938 by Fred White and Kenneth B. White, a jurat was appended thereto, which James Reiter signed as a Notary Public. The document purports to be a partnership agreement as to ownership of business property and as to sharing of profits and losses, on a fifty-fifty basis as expressed in the document. This document is designated plaintiff's Exhibit A. Other documents executed by Fred White and Kenneth B. White, in connection with the application for a private carrier permit are designated plaintiff's exhibit B and plaintiff's exhibit C.

"9. The plaintiff, Kenneth B. White, did exercise certain prerogatives of an active partner, such as authority over direction and control of business activities, including drawing of checks on the business bank account to pay business obligations and to meet his personal obligations and living expenses. These

prerogatives were exercised as a trusted employee of Fred White. Kenneth B. White was acting in a supervisory capacity, and exercised certain control over fellow employees. The withdrawing of funds from the business bank account for his personal use was the method used in compensating him as employee of Fred White.

"10. The defendant used, for many years, the trade name of 'Fred White and Son,' and possibly other versions of trade names, which use, standing alone, indicated a partnership to the extent, perhaps, and under such circumstances as might have estopped him from denying a partnership as to third parties relying upon a partnership.

"11. The circumstances relating to the application for, and securing of, the private carrier permit indicate that the sole purpose of the purported partnership agreement was to secure such permit. The application being made in the trade name, the practice of rather loose unconventional methods of doing business, the seeking of inexpert advice and assistance in connection therewith, (a real estate agent, Ed Reiter) caused the defendant and plaintiff to seek the easy solution to the permit problem, in complying with the commission's request for a partnership agreement, rather than starting over and making the application reflect the true facts.

"12. For several years the business did not prosper. It did prosper for some years after 1938. The defendant owed obligations which were never paid. Defendant's farm was foreclosed and later repurchased from the Federal Land Bank on an installment contract. The plaintiff worked diligently, long hours with but slight and inadequate compensation. He negotiated a loan from one Goldstein, a wool and junk metal buyer at Manhattan, Kansas, for the purpose of keeping the business from imminent failure. His efforts showed unusual devotion as an employee, even for a son of an employer. They do not, however, in view of all the circumstances surrounding the conduct of the business over many years lead to the conclusion that a partnership existed or was consummated, first in a purported oral agreement, or later by the purported written partnership agreement, plaintiff's exhibit A.

"13. After the execution of said Exhibits A, B, and C, no change whatsoever occurred in the manner of Fred White operating the business.

"14. At all times subsequent to the execution of Exhibit A, Fred White duly returned all property used in the business, save and except the pickup truck and its successors owned by the plaintiff, for ad valorem tax purposes. At all times subsequent to the execution of exihibit A, plaintiff separately returned said pickup truck and its successors as his property for ad valorem tax purposes. In the year 1955, plaintiff personally gave to the assessor defendant's business ad valorem return which showed the business personal property to be the property of Fred White.

"15. Defendant duly made in the regular course of his business social security tax returns as an employer in the operation of said business, and at all times from January 1, 1938, such returns show the plaintiff listed thereon as an employee of the defendant.

"16. Plaintiff filed income tax returns, both state and federal, indicating that he was an employee of Fred White, and on such returns the plaintiff listed as his sole and only income wages received from the defendant, Fred White.

"17. On February 7, 1956, the defendant executed a power of attorney, defendant's exhibit A. Such power of attorney is hereby incorporated herein by reference. The defendant made Richard E. White, Lyle White and Dorothy Bargar, three of his children, his attorneys-in-fact. On February 11, 1956, these attorneys-in-fact, and Orin C. Jordan, an attorney at law of Beloit, Kansas, went to the place of business of the defendant, and at that time and place, Orin C. Jordan handed the plaintiff a copy of said power of attorney. Orin C. Jordan, Richard E. White, Lyle White and Dorothy Bargar then held a conference with the plaintiff for some time. At, and during such conference, the plaintiff specifically stated that he was not a partner in said business. That he had always wanted a partnership with his father. That his father would not give him a partnership.

"18. During said conference the matter of future employment of Kenneth B. White was discussed, including the plaintiff continuing in his capacity as manager of the business at a definite and fixed salary. No agreement or conclusion was reached as a result of said discussion. The plaintiff did not assert any interest in and to the assets of the business, real estate or any other of the property of the defendant.

"19. On or about April 6, 1956, the plaintiff terminated his employment with Fred White.

"20. Fred White did in the course and operation of his business during the year 1944, and in the subsequent year, prepare and file financial statements to the First National Bank of Beloit, Kansas. That on such financial statement prepared during the year 1944, Fred White did state thereon that he had no partnership, that he was the owner and proprietor of said business. That on a subsequent financial statement the assets of such business were thereon listed as the assets and property of Fred White. The bank account in the First National Bank of Beloit, Kansas, was carried in the name of and was the property of Fred White. That during the year 1948, Fred White opened an account in the Traders State Bank of Glen Elder, Kansas. That the signature of the plaintiff was not authorized for the purpose of drawing checks on said account. Proceeds from the sale of merchandise incident to the operation of said business were placed in said account from time to time.

"21. During the year 1951 Fred White individually opened an account in the Citizens State Bank of Jewell, Kansas. He deposited in said account proceeds from the sale of merchandise from time to time. The signature of plaintiff was not authorized for the purpose of drawing checks against said account. Other members of the family of defendant, namely, R. E. White and Lyle White were from time to time authorized to draw checks against the account of Fred White in The First National Bank of Beloit, Kansas.

"22. Fred White individually is the sole and separate owner of all of said business property and said business. No partnership business has ever been carried on between the plaintiff and the defendant. At the time of the execution of the plaintiff's exhibit A, it was not the intent of the defendant or the plaintiff to enter into a partnership.

"23. The plaintiff failed to sustain the burden of proof.

"Conclusion of Law.

·"That the defendant have judgment for his costs herein."

Following return of the foregoing findings and conclusions plaintiff filed a motion for judgment, a motion to set aside such findings and conclusions and a motion for a new trial. When these motions were overruled the court, as heretofore indicated, rendered judgment against plaintiff in accord with its findings and conclusions. Hence this appeal.

In approaching the appellate issues involved it should be stated at the outset the court below tried this case on the theory that under the issues as joined by the pleadings parol or extrinsic evidence was admissible in its determination of whether a partnership existed between the parties; and added that many of the foregoing findings are based on such evidence.

Mindful that appellant based his claim on an oral as well as a written agreement; that it is admitted that no rights of third parties had intervened; and that in his case in chief he relied extensively on parol and extrinsic evidence in his efforts to establish such claim, we are inclined to the view there is little merit to contentions that the trial court committed error in permitting the appellee to introduce evidence of like character in defense of such claim or in relying on that evidence in making its findings and conclusions. Even so, we shall treat and dispose of claims of error made with respect to the propriety of its action in those particulars.

Ignoring all matters mentioned in the preceding paragraph and relying exclusively upon the written instrument described in Finding No. 8, heretofore quoted, appellant's principal claim ·of error in this case is that the trial court erred in admitting evidence tending to contradict, alter or vary the terms of that instrument. The trouble with all arguments advanced by appellant on this point is that the rule which prohibits the introduction of parol evidence to vary a written instrument has no application where the legal existence or binding force of the instrument is in question.

See the early case of *Bartholomew v. Fell*, 92 Kan. 64, 139 Pac. 1016, where it is held:

"Between the original parties to a written instrument the rule excluding parol evidence in contradiction of a written agreement is not infringed by proof that the instrument was never delivered, or was delivered to take effect only upon the happening of some future event." (Syl. ¶ 3.)

And in the opinion said:

"The general rule is that parol evidence is admissible to establish a fact collateral to a written instrument which would control its effect and operation as a binding engagement." (p. 68.)

See, also, *Rice v. Rice*, 101 Kan. 20, 165 Pac. 799, which holds:

"Although the terms of a written obligation, assumed to be valid, can not be varied by parol, it may be shown by parol what caused the party thus to obligate himself, and thereby test the question whether he is legally bound, as the writing imports, or whether he is by any cause wholly or partially freed from liability thereon." (Syl. ¶ 1.)

The rule of the foregoing decisions has been approved, stated and applied in many of our more recent decisions. For just a few of them see, *e. g., Greenleaf State Bank v. Monteith*, 173 Kan. 799, 802, 252 P. 2d 621; *Malir v. Maixner*, 174 Kan. 26, 29, 254 P. 2d 282; *Emery v. Graber*, 176 Kan. 17, 22, 268 P. 2d 950; *George v. Kohlasch*, 179 Kan. 337, 339, 295 P. 2d 655, and cases there cited.

See, also, *Burke v. Dulaney*, 153 U. S. 228, 38 L. Ed. 698, 14 S. Ct. 816; *Michels v. Olmstead*, 157 U. S. 198, 39 L. Ed. 671, 15 S. Ct. 580.

For well-recognized legal treatises where such rule is treated and discussed, citing numerous authorities, see 20 Am. Jur., Evidence, pp. 954, 955, 957 §§ 1093, 1094, 1097; 32 C. J. S., Evidence, pp. 852, 857, 881, 933, 942 §§ 929, 935, 952, 970, 979.

Here there can be no question that the legal existence or binding force of the instrument on which appellant relies to sustain the claim of error now under consideration is in question and the record makes it clear all evidence of which appellant complains was admitted for the purpose of showing that instrument, which apparently constituted a contract, was not intended or understood by either party to be binding as such. Therefore based on the foregoing decisions we have little difficulty in concluding the claim of error now under consideration lacks merit and cannot be upheld.

Appellant next contends the court erred in admitting evidence of an attempt to compromise. This claim relates to evidence adduced respecting conversations had at the meeting and between the parties, referred to in the court's Findings Nos. 17 and 18. We have examined the record and in the light of all the testimony respecting what took place at such meeting have no difficulty in concluding appellant erroneously assumes what took place there can be properly classified as an attempt to compromise differences between

appellant and appellee respecting the existence of a partnership. In fact it was at such meeting that appellant expressly stated that he was not a partner in the business, that he had always wanted a partnership with his father, but that the latter would not give him a partnership. Moreover, the record discloses that at this same meeting considerable discussion was had between the parties present as to the conditions and circumstances under which appellant would continue to work for his father. Under such circumstances we know of and appellant cites no authorities holding that testimony of this character would be evidence of a compromise and therefore inadmissible. It follows this claim of error lacks merit and cannot be upheld.

It is urged the trial court erred (1) in refusing to make findings of fact requested by the appellant; (2) in making findings of fact not based upon properly admissible evidence; (3) in overruling appellant's motion for judgment; and (4) in overruling his motion to set aside the findings of fact and conclusions of law. The gist of all arguments on these points is predicated upon appellant's erroneous theory the parol or extrinsic evidence admitted by the trial court was inadmissible under the parol evidence rule. Having heretofore determined that such evidence was admissible these claims of error fall of their own weight and need not be labored.

However, it is to be noted, that another error assigned is that the trial court erred in holding that no partnership did or had existed between the parties and that in connection with this claim it is argued that the evidence admitted and considered by the trial court was insufficient to sustain the findings on which it based its general conclusion respecting the business relationship existing between the parties. Merely to read the findings, as heretofore quoted, is all that is required to demonstrate they warrant the trial court's conclusion as to their force and effect if they are sustained by the evidence. Therefore we turn directly to that question.

It would add nothing to the body of our reports to detail the evidence on which a decision of the question just mentioned must necessarily depend. It suffices to say that after a careful and painstaking review of all the testimony admitted and considered we have little difficulty in concluding and we are convinced the record discloses ample competent testimony to sustain each and all of the findings and conclusions of the trial court. The result, under the rule established by this court in a long and unbroken line of deci-

sions (see West's Kansas Digest, Appeal & Error, §§ 1010[1], 1011[1]; Hatcher's Kansas Digest, [Rev. Ed.], Appeal & Error, §§ 507, 508), is that such findings are conclusive and will not be disturbed on appellate review even though, as appellant contends and we frankly concede, the record discloses some testimony which, if the trial court had seen fit to give it credence, might have warranted that tribunal in making findings and conclusions to the contrary.

In conclusion it should be stated that, although not here specifically mentioned, numerous other contentions advanced by appellant have been given consideration. We find nothing in them or in the arguments advanced in their support which warrants a reversal of the judgment. It is therefore affirmed.