MINERS' AND MERCHANTS' BANK, *a Corporation*

*v.*

ROBERT N. GIDLEY, SR.

(No. 12387)

Submitted September 21, 1965.   Decided November 9, 1965.

*Wilson & Frame, Clark B. Frame,* for appellant.

*Charles V. Wehner,* for appellee.

CAPLAN, JUDGE:

This is a civil action instituted in the Circuit Court of Preston County wherein the plaintiff, Miners' and Merchants' Bank, a Corporation, seeks to collect from Robert N. Gidley, Sr. a certain sum of money representing the purchase price of an automobile. After all the evidence had been submitted the jury returned a verdict for the plaintiff, and the defendant prosecutes this appeal.

On June 28, 1961 the defendant's son, Robert N. Gidley, Jr., then a member of the United States Air Force, was traveling in his automobile from Great Falls Air Base in Montana to his home near Albright in Preston County, West Virginia. While in the vicinity of Roundup, Montana his car broke down. Desiring to continue his trip, he contacted a salesman representing Hoiland Motors, Inc. of Roundup, Montana, and discussed the possibility of trading his vehicle for another car. As a result of this discussion Robert N. Gidley, Jr., who was then nineteen years of age, purchased a 1957 Chevrolet. The total purchase price of the car was $1,090.00. After the trade-in value of his automobile was credited on this amount and certain finance charges added, the total amount owing on the purchased vehicle was $905.07. This was to be paid in twenty-four consecutive monthly installments of $40.25 each. Failure to make these payments gave rise to this action.

The purchase was made on a conditional sales contract which was executed on June 28, 1961 by Don E. Belcher, a salesman for Hoiland Motors, Inc., and by Robert N. Gidley, Jr. In his deposition which was read to the jury in the proceeding in the trial court, Don Belcher testified that he explained to Robert N. Gidley, Jr. that his father would have to sign this conditional sales contract as a buyer in order to make the contract valid and that he sold the car with that understanding. He stated further that Gidley, Jr. also understood that his father would have to sign

the contract as a purchaser. This he said was necessary because Gidley, Jr. was a minor.

The evidence further reveals that on the day of the purchase, June 28, 1961, Gidley, Jr., after executing the contract, took possession of the car, placed his belongings therein and, with the permission and full knowledge of the seller, continued on his trip to his home in West Virginia. Belcher mailed the contract to Robert N. Gidley, Sr. on that day and requested that he place his signature thereon. He says that he also sent a letter with a full explanation of the contract. Having failed to hear from Gidley, Sr., Belcher, on July 6, 1961, called him at Albright, West Virginia and asked him if he had signed and mailed the contract. He stated that Gidley, Sr. told him he had signed it and that it would be mailed in the next day or so. No further word was received and, on July 11, 1961, Belcher again contacted Gidley, Sr. by telephone. He testified that Gidley, Sr. told him the contract was in the mail. His further testimony was that he received the contract, signed by Robert N. Gidley, Jr. and Robert N. Gidley, Sr. on July 12, on which date it was assigned by Hoiland Motors, Inc., to the plaintiff, Miners' and Merchants' Bank.

On July 19, 1961, while Robert N. Gidley, Jr. was driving this 1957 Chevrolet, an accident occurred and the car was totally wrecked. According to the testimony of Robert N. Gidley, Sr. the contract was executed and mailed by him to Hoiland Motors, Inc. on July 20, after the accident. He stated that he did this because he believed that the seller would need his signature on the contract in order to collect insurance. Thus we have a direct conflict relative to the exact date on which the contract was signed and delivered. Supporting the allegation that the contract was received by Hoiland Motors, Inc. on July 12, 1961 are the affidavit and deposition of Don Belcher, the salesman, and the deposition of William Bianchi, an official of the plaintiff bank. Furthermore, there appears as an exhibit in the original record of· this proceeding a copy of the contract executed by the seller and by Robert N. Gidley, Jr. and Robert N. Gidley, Sr., on the reverse side of which appears

the assignment thereof to the plaintiff. The date of such assignment as reflected on that exhibit is July 12, 1961. Supporting the contention that the contract was mailed to the seller on July 20, 1961 is the testimony of the defendant and that of his wife and son.

A further conflict in the testimony was the denial by the Gidleys, Robert N. Gidley, Sr. and his wife, that Belcher had ever contacted Mr. Gidley by telephone. Mrs. Gidley's testimony was that she had talked with Belcher and had told him that Hoiland Motors, Inc. had made the sale to their son and that they saw no reason to sign the contract and that they were not going to do so.

In relation to the insurance on the automobile, no charge was made on the sales contract therefor, and Belcher testified that he was told by Gidley, Jr. that he had insurance on his old car which he believed would carry over to a newly purchased automobile. Gidley, Jr., on the other hand, testified that he told Belcher he had only liability insurance. With these conflicts in the testimony the case went to the jury, which returned a verdict in favor of the plaintiff in the sum of $905.07.

The defendant takes the position that Robert N. Gidley, Sr. signed this conditional sales contract as a surety only and that since he did not receive any consideration therefor he could not be held liable. The plaintiff of course takes the position that Gidley, Sr. signed this contract as a co-purchaser and is therefore liable. During the trial Gidley, Jr. was permitted to renounce the contract and was dismissed from the case.

Considering first the contention of the defendant that he signed this contract as a surety for his son, we are of the opinion and so hold that the relationship of principal and surety did not exist in this case. The relation of suretyship arises from an agreement between the parties whereby one person becomes liable for the debt or duty of another, in which such person has no direct personal interest and from which he does not receive a benefit. 72 C.J.S., Principal

and Surety, Section 9. This relationship arises only by express contract. 50 Am. Jur., Suretyship, Section 10.

It is well established that the relation of principal and surety will not be presumed from the mere appearance of two names on an instrument. This is cogently stated in 72 C.J.S., Principal and Surety, Section 12, as follows: "Where the names of two or more parties to an obligation appear, it will be presumed, unless a different relationship is shown by the language of the writing, that all are principals; and in the absence of evidence to the contrary there generally is no presumption that any of such parties are sureties; * * *." This presumption may be rebutted by proper evidence.

In the case at bar two signatures appear on the contract. The language of the writing does not in any respect show that such persons are anything other than principals. There is no showing of a relationship of principal and surety. While, as stated above, the presumption that both parties are principals may be rebutted, no such rebuttal appears in this record. Nowhere does the defendant, either in the writing or by his evidence, even undertake to show that he signed the subject contract as a surety. In these circumstances and under the foregoing principles of law, this contention of the defendant must fail.

It having been decided that Gidley, Sr. did not sign the subject contract as a surety, it must now be determined in what capacity he did affix his signature to this instrument. This determination must be made from an examination of the contract and of the evidence adduced at the trial.

The contract upon which the plaintiff seeks recovery is signed by Robert N. Gidley, Jr. and Robert N. Gidley, Sr. Both signatues were on the contract when it was assigned to the plaintiff bank. Nothing has been paid on this obligation, nor has the automobile been returned. The plaintiff, therefore, taking the position that the defendant is a principal on the assigned instrument and consequently a co-purchaser, alleges that the sum of $905.07 is owing and due and seeks recovery thereof. In reply the defendant

says that he did not sign the contract as a co-purchaser but did so only after the car had been demolished and only as an accommodation so that the seller would be enabled to collect insurance. There is no explanation or any attempt to explain the manner in which this would aid in the collection of insurance.

The defendant further asserts that the contract was complete upon its delivery and upon the delivery of the car to his son and that he could not therefore be liable thereon. Answering this assertion the plaintiff denies that the contract was complete and effective when Gidley, Jr. executed it and took delivery of the car. Rather, it alleges, the contract was entered into with the full and complete understanding that it was not to be effective until the defendant executed it as a buyer.

The foregoing allegations and assertions give rise to the question of whether a contract may be executed on condition that it will not be effective until the happening of a specified event. This record is replete with evidence showing an intention on the part of the seller and Gidley, Jr. that the contract was not to be effective until the signature of Gidley, Sr. was affixed as a buyer. The affidavit of Don E. Belcher, a salesman of Hoiland Motors, Inc., which is a part of the record, shows that he was cognizant that Gidley, Jr. was a minor; that the contract was immediately mailed to Gidley, Sr. with a letter requesting him to sign it as a purchaser; that Gidley, Sr. stated to him that he had so signed it; and that the contract was received by the seller on July 12, 1961 with the signature of Gidley, Sr. affixed thereto.

The following questions and answers appear in the deposition of Belcher, which deposition was read to the jury: "Q. Do you recall the age of Robert N. Gidley, Jr.? A. Approximately twenty years old: at least I am sure he was a minor because the contract for sale had to be mailed to Robert N. Gidley, Sr. for his signature, along with a letter of explanation. Q. Was that part of the transaction at Melsone, Montana? A. That was explained thoroughly

to Robert N. Gidley, Jr. at that time that his father had to sign for him. * * * Q. Did you explain to Robert N. Gidley, Jr. that his father would have to sign the conditional sales contract with him as buyer? A. I did. Q. — in order to make it valid? A. Yes. Q. Did you sell this automobile to Robert N. Gidley, Jr. with that understanding? A. He had a complete understanding, and he also knew that I was mailing the contract to his father that evening for his signature." Upon direct examination Gidley, Jr. readily acknowledged that he knew that his fathers' signature was needed as a co-signer.

The following is stated in 17 Am. Jur. 2d, Contracts, Section 24: "In negotiating a contract the parties may impose any condition precedent, the performance of which is essential before they become bound by the agreement; in other words, there may be a condition precedent to the existence of a contract. * * * It has been held that parties to a written contract may agree that the contract is not to be operative until the happening of an oral condition, and consequently that it may be shown that the contract did not become operative because the parol condition was not fulfilled. A promise, or the making of a promise, may be conditioned on the act or will of a third person." See also *Evans* v. *Platte Valley Public Power & Irr. Dist.*, 144 Neb. 368, 13 N. W. 2d 401, and *Federal Reserve Bank of Richmond* v. *Neuse Mfg. Co., et al.*, 213 N. C. 489, 196 S. E. 848. In the latter case the Court said that a contract is not made so long as in the contemplation of both parties something remains to be done to establish a contract relation. "A contract may be signed on condition that it shall not take effect until others have signed it." 17 Am. Jur. 2d, Contracts, Section 71.

A condition precedent is not a question of phrase or form but of the intention of the parties. *Atlantic Pacific Oil Co.* v. *Gas Development Co., et al.*, 105 Mont. 1, 69 P. 2d 750. In the instant case, as indicated by the evidence and as apparently found by the jury, the parties intended that the contract entered into between Hoiland Motors, Inc. and Gidley, Jr. would not be complete and effective until the

defendant signed the instrument as a buyer. The addition of the defendant's signature to the contract was a condition precedent to entering into an effective contract. When this condition occurred the contract became complete and effective and the parties thereto were bound by the terms thereof. It was argued that the defendant should not be liable since he was not present when his son took delivery of this car and that he had no knowledge thereof. This may be so and the defendant certainly was under no obligation to sign his name to this contract. However, when he chose to sign it he became a party thereto and became liable under its terms.

Inasmuch as this controversy involves a written contract it may be asserted that parol evidence is inadmissible to show that its effectiveness was dependent upon the occurrence of a condition. This of course refers to the parol evidence rule which precludes the introduction of evidence designed to vary the terms of a written contract. The evidence adduced in the case at bar was not designed to vary the terms of the contract but was introduced only to show the condition upon which it was to become effective as a contract.

It is well settled that parol evidence is always admissible to show the nonexistence of a contract or to show the conditions upon which a writing is to become effective as a contract. 20 Am. Jur., Evidence, Sections 1094 and 1095; 32A C.J.S., Evidence, Sections 967 and 972. In *Harris* v. *Sanford*, 148 Va. 181, 138 S. E. 465, it was held that the right to prove that a written document was delivered on condition is not within the principle of the parol evidence rule. A conditional delivery or execution of a writing may be shown by parol. *Bailey* v. *Westmoreland*, 251 N. C. 843, 112 S. E. 2d 517; *Hensley Ins. Co.* v. *Echols*, 159 Fla. 324, 31 So. 2d 625; *Emery* v. *Graber*, 176 Kan. 17, 268 P. 2d 950; *Burrowes Corporation* v. *Read*, 151 Me. 92, 116 A. 2d 127.

The governing principle to the effect that the parol evidence rule is not applicable in the case before us is found in Restatement, Contracts, Section 241, as follows: "Oral

Agreements That Writings Shall Not Become Binding Until a Future Event. Where parties to a writing which purports to be an integration of a contract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

In *White* v. *White,* 183 Kan. 162, 326 P. 2d 306, the Court held that it may be shown by parol what caused a party to obligate himself. It further said that parol evidence is admissible to establish a fact collateral to a written instrument which could control its effect and operation as a binding agreement. See also *Moody* v. *Smith,* 9 Utah 2d 139, 340 P. 2d 83; *Western National Ins. Co.* v. *Trent,* 69 Nev. 239, 247 P. 2d 208; *Service Fire Ins. Co.* v. *Craft,* 219 Miss. 18, 67 So. 2d 874; *Bond, et al.* v. *Wiegardt, et al.,* 36 Wash. 2d 41, 216 P. 196; and *Baker* v. *Baker,* 143 Tex. 191, 183 S. W. 2d 724.

In the case under consideration evidence was adduced which tended to show that the seller entered into this contract with Gidley, Jr. only upon the condition that his father would also sign the contract as a buyer. The contract introduced into evidence, executed by both Gidley, Jr. and Gidley, Sr., shows that the defendant was a purchaser. In accordance with the authorities cited and quoted above the evidence showing the condition under which this contract was consummated was properly admitted. This proposition was succinctly stated in *Schonberger* v. *Culbertson, et al.,* 231 App. Div. 257, 247 N.Y.S. 180, as follows: "If defendants would not enter into the contract unless the infant plaintiff's father signed as principal, then oral testimony may be admitted to establish that fact."

While the evidence may have been conflicting it was submitted to the jury and that body has made its findings. In the circumstances of this record we will not disturb such findings. "A jury verdict based on conflicting testimony, involving the credibility of witnesses and approved by the

trial court, will not be set aside by this Court on the ground that it is contrary to the evidence unless in that respect it is clearly wrong." Point 1, Syllabus, *Levine* v. *Headlee,* 148 W. Va. 323, 134 S. E. 2d 892.

For the reasons stated herein the judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*