No. 46,425

BUD JENNINGS CARPETS AND DRAPERIES, INC., *Appellee,* v. BURTON P. GREENHOUSE AND BETTY L. GREENHOUSE, *Appellants.*

(499 P. 2d 1096)

Opinion filed July 19, 1972.

*John W. Brand, Jr.,* of Stevens, Brand and Brand, of Lawrence, argued the cause and was on the brief for the appellants.

No appearance for the appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a partial summary judgment ordering the defendants, Burton P. Greenhouse and Betty L. Greenhouse, ejected from leased premises recently purchased by the plaintiff, Bud Jennings Carpets and Draperies, Inc. The defendants-Greenhouse appeal. For brevity and clarity we will continue to refer to the parties as the plaintiff and defendants.

The plaintiff's petition alleged it to be the owner of the described premises under a warranty deed from the former owners, Axel W. Olson and Irene B. Olson. The petition stated that defendants obtained possession of the premises under a leasing agreement evidenced by two contemporaneous instruments executed by the Olsons and the defendants. Copies of the deed and the two lease instruments were attached to the petition as exhibits. It was further alleged that the Olsons served notice and did terminate the defendants' tenancy under authority of a provision for termination contained in the leasing agreement. The leasing agreement pro-

vided for payment of rentals of $180.00 per month. The defendants refused to give up possession of the premises. The prayer of the petition reads:

"WHEREFORE, the plaintiff prays for a judgment ejecting the defendants from the property described herein and permitting plaintiff to recover said real property and for a money judgment for rentals owing from the defendants to plaintiff on a per day basis prorated on a rental of $180.00 per month for every day defendants remain in possession subsequent to September 15, 1970, and for their costs in this action."

The defendants, by answer, conceded the plaintiff's acquisition and ownership of the premises and the receipt of the 60 day notice to terminate the tenancy in event of a sale. They denied the provision for termination was an effective and binding part of the leasing agreement. Further answering the defendants admitted their obligation for rents as follows:

". . . [T]hat on September 15, 1970, and October 15, 1970, defendants tendered to plaintiff checks of $180.00 but defendant [plaintiff] has refused the same and defendants have ever since remained and still are ready and willing to pay the plaintiff said sum."

After discovery procedures had been completed plaintiff filed a motion for summary judgment predicated upon the admissions of the defendants and upon issues litigated and determined in a previous action in the same court, which action will be referred to as Case No. 25,012.

Case No. 25,012 had previously been filed by the defendants-Greenhouse against the Olsons, the lessors. The action was brought to enforce a provision to limit competition contained in this same leasing agreement evidenced by the two contemporaneously executed instruments. For reasons not material here the plaintiff, Bud Jennings Carpets and Draperies, Inc., was interpleaded in the case as a third party defendant and took part in that litigation. The action was brought to obtain an injunction and damages.

The present defendants-Greenhouse as plaintiffs in Case No. 25,012 alleged in their petition:

"2. On or about February 8, 1967, Plaintiffs entered into two written agreements with Defendants for the rental and lease of the following described premises in Lawrence, Douglas County, Kansas:

The North one-half (½) of the North one-half (½) of the First Floor of the Building located on Lot Sixty Five (65) on Massachusetts Street, in the City of Lawrence, Kansas.

Said leases are attached hereto and marked respectively, Exhibits A and B. Plaintiffs have occupied the premises under said lease since March 15, 1967.

"3. Exhibit B provides in part as follows:

Le*a*see shall use premises for a retail cosmetic store with all associated items and services and Le*a*sor agrees that during the term of this lease and any renewal thereof, Le*a*sor shall not lease the premises to the South of the premises leased herein for any purpose and [in] competition in any way to the Le*a*see or for any purpose which detract from the purpose of the Le*a*see.

"4. Notwithstanding the provisions of the preceding paragraph, Defendants have leased the premises to the South of the premises leased the Plaintiffs for a business operating in competition to the Plaintiffs for a business operating in competition to the Plaintiffs' and detracting from the purpose of the Plaintiffs' business.

"By reason of said competition, Plaintiffs have suffered damages in the amount of $5,000. Further, Defendants should be enjoined from allowing the continuation of said competition."

Exhibits A and B referred to above are the same written instruments concerned in the present litigation. The business in competition referred to was that of Bud Jennings Carpets and Draperies, Inc.

After a trial to the court of Case No. 25,012 the essential facts found included the following facts surrounding the execution of the two instruments, to-wit:

"1. Defendants Olson own a business building which is situated in the 800 block on Mass. Street in the City of Lawrence. This building is divided into space for two small stores the entrances to which are on either side of the dividing partition. Defendants Olson reside on the second floor of their building and shall hereinafter be referred to as defendants.

"2. On February 8, 1967 plaintiffs came to defendants' residence for the purpose of entering into a lease for the north part of defendants' building. At this meeting defendants had a form lease which had been prepared for signatures and plaintiffs [Greenhouse] brought a typed lease which they had prepared for signatures. After some discussion the parties agreed to sign both leases and this they did following which plaintiffs [Greenhouse] paid the rent for the first month as required by the terms of the typed lease. Both leases provide for a three year term beginning March 15, 1967 and although both contain a provision for renewal the form lease grants the right to one two-year renewal, while the typed lease grants the right to two one-year renewals provided sixty days notice in writing of the exercise of such option is given. The basic difference between the two leases however is that the typed lease contains a covenant designed to prevent defendants [Olson] from leasing the south part of their building for a use which would in any way compete with the plaintiffs' use of the portion of such building leased to plaintiffs [Greenhouse], which covenant does not appear in the form lease. . . ."

The court held that the leasing agreement as disclosed by the two written instruments was valid and binding between the parties

and the covenant against competition contained in the typed instrument was enforceable. An examination of the two instruments indicates that the covenant against competition appears in the "typed" instrument. No similar covenant is contained in the "form" instrument.

In the case now under consideration the provision for termination of the tenancy appears in the "form" instrument. No similar provision is contained in the "typed" instrument.

The applicable rules of law applied by the trial court are clear. When separate instruments are executed contemporaneously and as a part of the same transaction they will be read and construed together to determine the rights of the parties. (*Bowen, Administrator v. Hathaway*, 202 Kan. 107, syl. ¶ 5, 446 P. 2d 723.) Language in a contract is not ambiguous unless the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings as to the matter in question. (*Wood v. Hatcher*, 199 Kan. 238, Syl. ¶ 1, 428 P. 2d 799.)

In our present case if the two contemporaneous lease instruments are construed together they contain but one provision for termination in case of sale. There are no conflicting provisions which relate to this matter. The termination provision reads:

"The second parties expressly agree that in case the said premises are sold they will give possession within 60 days after being notified of said sale, if so requested by said first parties heirs or assigns."

We discern no ambiguity or uncertainty in the wording of the provision for termination.

The defendants-Greenhouse argued in the court below that the entire "form" instrument, which contained the provision for termination in case of sale, was never effective or binding upon the parties. The interrogatories answered by Betty L. Greenhouse indicated that she would testify in a trial of the case that both the Olsons and the Greenhouses agreed and understood when the two instruments were executed that the "form" instrument proposed by the Olsons was to have no force or effect. This same contention is now made on appeal. In support of the admissibility of such oral testimony defendant-appellants cite many authorities including *White v. White*, 183 Kan. 162, 326 P. 2d 306. *White* holds *as between the original parties* the rule which prohibits the introduction of parol evidence to vary a written instrument has no application when

the legal existence or binding force of such instrument is in question. When applicable the rule is sound.

However, the trial court did not base its decision upon the parol evidence rule. Its decision, which precluded such a defense, was based upon the doctrine of collateral estoppel arising from the litigation in Case No. 25,012. That case was initiated by the defendants-Greenhouse against the Olsons. The present plaintiff was interpleaded. Thus the judgment in Case No. 25,012 was mutually binding on all present parties.

As shown by the allegations in the petition filed in Case No. 25,012 rights of tenancy were claimed by defendants-Greenhouse under and by virtue of both instruments. They attached copies of both instruments to their petition as Exhibits A and B and alleged they were occupying these same premises under a leasing agreement evidenced thereby. On the basis of those allegations their tenancy was recognized as being created by both instruments and the covenant against competition contained in the leasing agreement was determined to be valid and enforceable after a trial on the merits.

In *Penachio v. Walker,* 207 Kan. 54, 483 P. 2d 1119, the doctrine of collateral estoppel was discussed and distinguished from the doctrine of *res judicata.* On page 57 of that opinion it was stated:

". . . The doctrine of collateral estoppel is a bar in an action upon a different claim as to certain matters in issue which were determined in a former judgment. The distinction between *res judicata* and collateral estoppel is based on the distinction between a cause of action and issues in a cause of action. [Citations omitted.]"

The doctrine of collateral estoppel may be invoked as a bar to litigating an issue when the following is shown (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity therein and (3) the issue litigated must have been determined and necessary to support the judgment. (*Penachio v. Walker,* supra.) The doctrine was discussed in *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 129, 495 P. 2d 1011. The doctrine was recognized in *Green v. Kensinger,* 193 Kan. 33, 39, 392 P. 2d 122, and was applied in *Burnison v. Fry,* 199 Kan. 277, 283, 428 P. 2d 809. Summary judgment procedure can be utilized to invoke the doctrine of collateral estoppel, see *Goetz v. Board of Trustees,* 203 Kan. 340, Syl. ¶ 10, 454 P. 2d. 481.

In the prior action (Case No. 25,012) the present parties litigated certain defined issues. The ultimate facts surrounding the execution of the two contemporaneous instruments were litigated to establish a leasing agreement which was a basis for the rights and liabilities of the parties. The two instruments were pleaded by the Greenhouses as their leasing agreement. The final judgment in the action was on the merits and one of the matters in issue which was heard and finally determined was that the two lease instruments created a valid and enforceable leasing agreement.

Therefore the trial court properly held in the present case the defendants were precluded as a matter of law from re-litigating that issue which the parties had laid to rest in the prior action.

A motion for summary judgment may properly be sustained if there remains no genuine triable issue as to any material fact and if the moving party is entitled on the record to a judgment as a matter of law. (*Brick v. City of Wichita,* 195 Kan. 206, Syl. ¶ 1, 403 P. 2d 964; *State Bank of Burden v. Augusta State Bank,* 207 Kan. 116, Syl. ¶ 1, 483 P. 2d 1068.) When the pleadings or proof of either party disclose that no claim for relief or defense exists, a summary judgment may be granted. (*Hastain v. Greenbaum,* 205 Kan. 475, Syl. ¶ 3, 470 P. 2d 741.)

The trial court entered judgment on the ejectment feature of this case. No judgment was entered against the defendants for the amount of the unpaid rentals. A party seeking to recover upon a claim may move for a summary judgment in his favor as to all or any part thereof. (K. S. A. 60-256 [a] and [d].) The partial summary judgment was proper. The defendants were precluded by the doctrine of collateral estoppel from presenting a genuine issue on the binding effect of the "form" lease instrument. The record before the court on the motion for summary judgment disclosed that such defense was not open to the defendants. The partial summary judgment in favor of plaintiff was proper and disposed of the ejectment feature of the claim.

In addition to the ejectment feature the plaintiff was claiming a money judgment for rentals owing from the defendants on a per day basis prorated on a rental of $180.00 per month for every day defendants remained in possession subsequent to September 15, 1970. The defendants in their amended answer acknowledged liability therefor. Plaintiff is entitled to a money judgment to the extent prayed for in its petition.

The partial summary judgment as to ejectment is affirmed with directions to enter a money judgment against the defendants in accordance with the prayer of plaintiff's petition after determining the period of time defendants have remained in possession of the premises.