(3 P.3d 586)

No. 81,601

STATE OF KANSAS, *Appellee*, v. BARRY CHATAGNIER, *Appellant*.

Opinion filed April 7, 2000.

*Jessica C. Kunen*, chief appellate defender, for the appellant.

*Thomas R. Stanton*, assistant county attorney, *Julie McKenna*, county attorney and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., BARRY A. BENNINGTON, District Judge, assigned, and PHILIP L. SIEVE, District Judge, assigned.

BENNINGTON, J.: On February 13, 1996, appellant Barry Craig Chatagnier pled guilty to possession of marijuana with intent to sell (Count I); possession of methamphetamine (Count II); and no tax stamp (Count III). On April 15, 1996, he was sentenced to 3 to 10 years on Count I, 3 to 10 years on Count II, and 1 to 5 years on Count III, to be served concurrent with each other, for a controlling term of 3 to 10 years. The district court granted probation under the supervision of community corrections for a period of 24 months. Appellant was ordered to pay $300 in restitution as a condition of probation.

Because appellant was on probation in Texas until 2004, the district court ordered such drug and alcohol treatment as required by the Texas probation. Other conditions of probation included no

consuming of drugs or alcohol; random testing of breath, blood, and urine; community service; curfew; travel restrictions; reporting to his court services officer; gaining and maintaining employment; and staying away from businesses that earn more than half of their income from the sale of alcohol.

Initially, appellant indicated he wanted to remain in Kansas. However, his probation officer, Mark Mitchell, received permission through an interstate compact to transfer appellant's case to Texas, as appellant had established residency there. Appellant was supervised by Michael Russell in Texas.

On April 9, 1997, Kansas filed a motion to revoke probation, alleging that appellant had failed to report to the supervising officer as directed; failed to comply with the guidance and counsel of the supervising officer; failed to obtain the supervising officer's advice before changing residence; and failed to refrain from the use of drugs and alcohol. On the same date, Mitchell signed a request for a show cause hearing alleging specific violations—failure to obtain the supervising officer's advice before changing residence and failure to refrain from the use of any mind-altering chemicals, including alcohol. These violations were based on a report received from Russell which indicated that appellant had tested positive for cocaine on November 7, 1996, and January 2, 1997. The report also indicated that appellant had failed to report a change of address to Russell.

At a probation violation hearing, Mitchell testified he had filed the show cause order based upon the information he had received from Russell via facsimile transmission. Based on Russell's report, the State asked that appellant's probation be revoked on the ground that drug and alcohol treatment options could not be considered because of appellant's evasive action in not submitting himself to the custody of the Dallas County Jail, and because he had tested positive for cocaine on the above-mentioned dates. Mitchell testified on cross-examination that he was not familiar with the drug treatment program appellant had initially entered, and he had no knowledge as to what other programs existed in Texas.

Appellant testified that on September 17, 1997, he appeared in the district court of Dallas County on a motion to revoke his Texas

probation. The court continued his probation with the condition he be sent to the "substance alcohol felony punishment facility for 90 days of continued drug rehabilitation." Appellant testified he was unable to enter and complete the program because of the warrant issued from Kansas. Appellant entered a voluntary drug treatment facility in the Dallas County Jail in January or February 1993. The Dallas County District Court agreed to this treatment and modified the conditions of probation accordingly.

It is clear that the probation violation proceedings in both Texas and Kansas were based upon the same alleged violation—testing positive for cocaine. Further, the record indicates that the Dallas County District Court continued appellant's probation with the added condition of drug treatment requirements. The Saline County District Court found that appellant had admitted to violating the terms of his probation by failing to refrain from the use of drugs. After Mitchell stated there were no other treatment options "unique and varied" from what had been offered in Texas, the court revoked appellant's probation and remanded him to the custody of the Secretary of Corrections.

The appellant's contention is that Kansas is collaterally estopped from revoking his probation. Texas was supervising appellant's Kansas probation under the authority of the Uniform Act for Out-of-State Parolee Supervision (Act), K.S.A. 22-4101 *et seq.* A hearing was held in Texas on the charge that appellant had violated the conditions of his Texas probation by the unlawful use of cocaine. The appellant contends that since Texas did not revoke his probation, Kansas may not do so either. This issue is apparently one of first impression in this state and neither party has provided us with precedent from other jurisdictions.

The facts are undisputed. We are asked to interpret the applicable portions of the Act and determine if Kansas is collaterally estopped from revoking appellant's probation. This is a question of law over which we exercise unlimited review. See *State v. Kelly,* 262 Kan. 755, 766, 942 P.2d 579 (1997).

The applicable portion of the Act as enacted in Kansas is found at K.S.A. 22-4101:

"The contracting states solemnly agree:

"(1)   That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this compact (herein called 'sending state'), to permit any person convicted of an offense within such state and placed on probation or released on parole or postrelease supervision to reside in any other state party to this compact (herein called 'receiving state'), while on probation, parole or postrelease supervision, if

(a)   Such person is in fact a resident of or has his family residing within the receiving state and can obtain employment there.

. . . .

"(2)   That each receiving state will assume the duties of visitation of and supervision over probationers, parolees or persons on postrelease supervision of any sending state *and in the exercise of those duties will be governed by the same standards that prevail for its own probationers, parolees or persons on postrelease supervision.*

"(3)   That duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation, parole or postrelease supervision. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. *The decision of the sending state to retake a person on probation, parole or postrelease supervision shall be conclusive upon and not reviewable within the receiving state.*" (Emphasis added.)

The appellant focuses on the last sentence of subsection 2 and argues this requires Kansas to be bound by the actions of Texas in regard to actions taken on the question of probation revocation based on his apparent cocaine use. On the other hand, appellee points to the last quoted sentence of subsection 3 and argues that the critical issue of retaking a person on probation is reserved by the sending state, in this case, Kansas.

Neither party has referred to any statutory history that might be of assistance. However, we agree that the language cited by the appellee is controlling. The appellant cites *Williams v. Evans*, 220 Kan. 394, 396, 552 P.2d 876 (1976), a civil case, concerning our rules on collateral estoppel:

" 'The doctrine of collateral estoppel may be invoked as a bar to litigating an issue when the following is shown (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be

the same or in privity therein and (3) the issue litigated must have been determined and necessary to support the judgment.' " (Quoting *Bud Jennings Carpets & Draperies, Inc. v. Greenhouse*, 210 Kan. 92, 96, 499 P.2d 1096 [1972].)

Probation from serving a sentence is an act of grace by the sentencing judge. *State v. Starbuck*, 239 Kan. 132, 133, 715 P.2d 1291 (1986). Although our sentencing guidelines have made probation presumptive in defined circumstances, the status of being a probationer is not identical to being a totally free citizen. A probationer is subject to the possibility of many restrictions, some being quite burdensome. In addition, the probationer has been found guilty of a crime and has been relieved from the full brunt of the criminal law by the court only by an agreement to follow certain conditions. Also, revocation of probation does not require the full panoply of criminal procedure, as guilt of the underlying crime has already been established.

Keeping these ideas in mind, we note that the appellant faces a number of difficulties in applying civil collateral estoppel rules to the instant case. The first issue is the language of the Act. The Act allows states to handle the day-to-day supervision of other states' parolees and probationers, but it specifically excepts the decision to retake its parolees and probationers from the powers granted to the receiving state—here, Texas. Therefore, the issue of Kansas' probation revocation charge was never before the Texas court, nor did Texas ever claim it was.

The second problem with appellant's position is that "the rule of estoppel by adjudication or collateral estoppel means nothing more, when applied to a criminal case, than 'double jeopardy.' " *State v. Pruitt*, 216 Kan. 103, 105, 531 P.2d 860 (1975). Under longstanding rules of United States Fifth Amendment double jeopardy jurisprudence, there is not necessarily any double jeopardy bar to prosecution of a person for the same act by different sovereigns. *Heath v. Alabama*, 474 U.S. 82, 87-89, 88 L. Ed. 2d 387, 106 S. Ct. 433 (1985); *State v. Speed*, 265 Kan. 26, 48-49, 961 P. 2d 13 (1998). Persons can be charged by different sovereigns for the same acts without being able to claim the protections against double jeopardy. The same would certainly apply to revocation of two different probations based on the same violations.

The final difficulty with the appellant's position is that the crucial issues here were whether he had abused cocaine and whether the *Kansas* probation should be revoked. The first issue was resolved against the appellant. As noted above, the issue of the Kansas probation was never before the Texas courts. Whether a Texas court believed that appellant's Texas probation should or should not be revoked is not controlling on the issue of his Kansas probation. Appellant was not charged with the crime of possession of cocaine, but with the violation of his Kansas probation for the abuse of the drug. Decisions made by Texas as to its own system of probation and parole have no relation to what Kansas might think best for public safety and the individual needs for correction and punishment of a particular individual. Therefore, even if collateral estoppel could be considered, there was no identity of parties or issues.

Affirmed.