# CHARLESTON.

JARRELL *v.* JARRELL *et al.*

Submitted January 30, 1886.—Decided February 25, 1886.

1. Equity will not relieve against a mistake in a written instrument, unless the mistake be perfectly distinct from the sense of the instrument. (p. 748.)

2. A mistake in the execution of a writing will not in equity be corrected, unless it appears, that the writing does not contain the intention of the parties thereto at the time it was made; and the proof of this either parol, written or both must not be loose, equivocal or contradictory nor in its texture open to reasonable doubt or opposing presumptions; for the .writing itself is re-

garded as evidence so strong, that only other unequivocal evidence irresistibly conclusive is sufficient to reform it.   (p. 748.)

*Ruffner & Jackson* and *T. L. Broun* for appellant.

No appearance for appellee.

JOHNSON, PRESIDENT:

This is an appeal from a decree of the circuit court of Boone county.   In 1869, on March 6, Madison Jarrell conveyed to John Jarrell a tract of land " lying and being in Boone county * * on Big Coal river below the Marsh Fork thereof containing 100 acres more or less, bounded as, follows, to-wit:" (here follow the metes and bounds—and then follows): " that is to say the said John Jarrell to have the upper part of said survey down the river to the lower end of Madison Jarrell's plantation; thence a straight line across the bottom and river to a large chestnut and sugar tree ; thence a straight line to the other line of said survey."   On March 12, 1879, John Jarrell and wife conveyed the same tract of land to Leftridge Jarrell, describing it as follows : " All his right, title and interest in a certain tract or parcel of land situate near forks of Big Coal river, in the county of Boone, State of West Virginia, *it being the same tract conveyed by Madison Jarrell to the party of the first part* containing 100 acres more or less."   On January 5, 1880, John Jarrell and wife conveyed by metes and bounds to Madison Jarrell sixty-three acres of the same 100 acres of land.   This deed was on March 10, 1880, admitted to record.

In October 1881, Leftridge Jarrell filed his bill in the circuit court of Boone county, to cancel and annul the said last mentioned deed for sixty three acres as a cloud upon his title. John Jarrell answered the bill denying that said deed was a cloud on Leftridge Jarrell's title, alleging there was a mistake in said deed from him to Leftridge Jarrell, that he supposed he conveyed to him, a portion of the 100 acres down *to a cross-fence*; that he could neither read nor write;   that a scrivener wrote the deed and told him before he signed it, that it only conveyed that part of the tract *above the cross-fence.*

Madison Jarrell answers the bill and insists, that there was a *mistake* in his deed of March 6, 1869, to John Jarrell; that he only intended to convey the upper part of the farm

to his son John down to the *cross-fence*; and that as soon as the error was found out (eleven years afterwards) his son John and wife re-conveyed all the land below the *cross-fence* to him.

The answers pray that they may be taken and treated as cross-bills, and that the deed to Leftridge Jarrell may be re-formed so as only to convey the portions above the cross-fence in accordance with the true intent of the parties when the said deed was made.

Leftridge Jarrell replied specially to the new matter in the answer of Madison Jarrell.

Many depositions were taken, and on April 24, 1884, the cause was heard, and the court dismissed the plaintiff's bill, and in accordance with the prayer of the answer ordered, that the deed from John Jarrell and wife to Leftridge Jarrell should be reformed, so as to convey only the part of the land above the *cross-fence*, &c.

From this decree Leftridge Jarrell appealed.

Have the defendants shown themselves entitled in a court of equity to have the deed of March 12, 1879, from John Jarrell to Leftridge Jarrell reformed for mistake ? Chief Justice Janey in *Tucker* v. *Madden*, 44 Me. 215, in delivering the opinion of the court truly said : " It is a well established rule of law in courts of law, that a written instrument duly executed contains the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol. But equity has a jurisdiction which is broader and will open the written contract to let in an equity arising from facts perfectly distinct from the construction of the instrument itself. It must be an essential ingredient to any relief under this head that it should be an accident perfectly distinct from the sense of the instrument. (Lord Thurlow in *Shelburne* v. *Inchiquin*, 1 Bro. Ch'y. 338)."

Lord Hardwicke said in *Hinkle* v. *Royal Exchange Insurance Co.*, 1 Ves. 319, that the court had jurisdiction to relieve in case of a plain mistake in contracts in writing as well as against fraud. But that those, who undertake to rectify an instrument in writing by showing a mistake, undertake a task of great difficulty.

Lord Eldon in his opinion in *Marquis of Townsend* v. *Stany-groom*, 6 Ves. 328, said: " Lord Hardwicke saying the proof ought to be the strongest possible leaves a weighty caution to future judges. In *Lady Shelburne* v. *Lord Inchiquin*, it is clear Lord Thurlow was influenced by this as the doctrine of the court, saying it was impossible to refuse as incompetent parol evidence, which goes to prove, that words taken down in writing were contrary to the concurrent intention of the parties; but he always thought it must be of the highest nature, for he adds it must be irrefragable evidence."

Chancellor Kent in *Gillespie* v. *Moore*, 2 Johns. Ch'y 507, said : "The cases concur in the strictness and difficulty of the proof, but still they all admit it to be competent, and the only question is: Does it satisfy the mind of the court ? *Lord Hardwicke* said it must be proper proof and the strongest proof possible; and *Lord Thurlow* that it must be strong, irrefragable proof; and he said the difficulty of the proof was so great, that there was no instance of its prevailing against a party insisting that there was no mistake."

In *Edmond's Appeal*, 59 Pa. St. 22; it appears, that it was claimed, that a mistake was made by the scrivener who prepared a policy of insurance, and inserted "five" instead of "three," so that it appeared on the face of the policy, that the insurance was to continue for five years. After the three had expired but within the five, the property was burned, and an action at law was commenced on the policy to recover the loss; and this suit was brought to have the policy cancelled and the defendant restrained from prosecuting his action at law. The plaintiff introduced evidence indicating that the insurance was to be for *three* years. The defendant gave evidence by the agent who effected the insurance, that at the time the insurance was made for a five year's risk, and the defendant paid for such risk; that he recorded the risk at first on his books as a *three* years' risk; he afterwards made another calculation, and changed his record so as to make it a five years' risk. The common pleas court, the presiding judge dissenting, cancelled the policy and enjoined the prosecution of the suit at law. The superior court reversed the decree and dismissed the bill. Read, judge, said :

"Relief will be granted in cases of written instruments,

only where there is a plain mistake clearly made out by satisfactory proof. But the qualification is most material, since it can not fail to operate as a weighty caution upon the minds of all judges, and it forbids relief, whenever the evidence is loose, equivocal or contradictory or is in its texture open to doubt or to opposing presumptions. Such is the language of Judge Story in his admirable Commentary on Equity Jurisprudence. The proof must be such as will strike all minds alike as being unquestionable, and free from reasonable doubt."

Judge Story in sec. 152, 1 Eq. Jur. says: "In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and complete exposure of the intent, until the contrary is established beyond reasonable controversy."

It was held by the supreme court of Wisconsin, that it would be an extreme case, which would justify the court in reforming or defeating a written instrument upon the uncorroborated testimony of a party thereto, even if such testimony was uncontradicted. (*Harter* v. *Christoph*, 32 Wis. 245).

In *Hileman* v. *Wright*, 9 Ind. 126, it was decided, that equity will relieve against a mistake in a sealed instrument upon parol evidence but only upon the clearest proof of the *actual agreement* and of the mistake.

In *Shattuck* v. *Gay*, 45 Vt. 87, it was held, that equity requires clear and full proof to warrant the reforming of a contract and especially of a deed.

In *Minor* v. *Hess*, 47 Ill. 70, it was held, that the rule is well established in all cases, that where a writing is sought to be reformed, the evidence of the mistake must be clear and satisfactory leaving but little if any doubt of the mistake.

In *Weidebusch* v. *Hartenstein*, 12 W. Va. 760, this Court held, that to rescind a deed on the ground that by mistake it was made instead of a will, the proof *must be very clear and strong*, that the scrivener through a mistake drew a deed instead of a will.

In *Manufacturing Co.* v. *Coal Co.*, 8 W. Va. 406, the rule is laid down in the following strong language: "In a court of equity it may some times be proved, that the deed was executed in mistake, and that in fact it embodies provisions different from those which the parties intended. But even in this Court the deed is regarded as evidence so strong, that only other unequivocal evidence irresistibly conclusive is sufficient to overthrow it."

It therefore seems to be settled, that equity will not relieve against a mistake in a written instrument, unless the mistake be perfectly distinct from the sense of the instrument. A mistake in the execution of a writing will not in equity be corrected, unless it appears, that the writing does not contain the intention of the parties thereto at the time it was made; and the proof of this either parol or written or both must not be loose, equivocal or contradictory nor in its texture open to reasonable doubt or opposing presumptions; for the writing itself is regarded as evidence so strong, that only other unequivocal evidence irresistibly conclusive is sufficient to reform it.

Now tested by this strong rule, which is necessary to protect titles to property, was the decree of the circuit court right?

As we have seen *Lord Thurlow* said that "the difficulty of the proof was so great that there is no instance of its prevailing against a party insisting that there was no mistake. Here Leftridge Jarrell insists there was no mistake; that he went to the records and examined John Jarrell's deed and found it conveyed 100 acres by meets and bounds; that John Jarrell at first asked him $600.00 for it and finally agreed to take $200.00. The evidence shows that the whole place was worth about $750.00 and the part above the cross-fence, from $250.00 to $300.00. It is also in evidence that Madison Jarrell lived on the lower end of the place, and John on the upper end; that Madison had a second wife whose maiden name was Kelly, and she had several children; she was John Jarrell's step-mother and the children his half brothers and sisters; that he did not like them, and said before he sold, that he was going to get them out, and said he would sell the place, if he did not get more than $100.00 for it.

On the other hand there is evidence of declarations of Leftridge Jarrell indicating that he got more land than he thought he was buying. It is also in evidence, that Leftridge Jarrell employed the scrivener to write the deed; and Barrett the scrivener in his deposition says he don't remember that any one other than himself and Leftridge Jarrell was present, when he wrote the deed. He says: "He asked me to write the deed for him from John Jarrell. I sat down to write the deed and wrote it on down until it came to describe the land. As well as I remember I asked him how to describe the land. He said, as well as I remember, that he did not know; then I remarked, that we would commence at the cross-fence and run with it, the cross-fence, to the back side, but that I did not know how it run on the back side, and Leftridge Jarrell said he did not know how it run back there, is my recollection of his remark. Then I suggested that I would write the deed so as to refer to the deed of Madison Jarrell to John Jarrell for description of the land, and as well as I remember he said, 'I guess that will do.' I don't remember any other conversation except that he told me that he wanted me to take the acknowledgment of the deed."

In answer to the question: " Why did you get the impression at the time of writing the deed that it only conveyed the land from the cross-fence up ?" he said: " The way I got it into my head, I thought that John Jarrell had two deeds; that Madison Jarrell had made him a deed for the upper end, and a sham deed for the lower end. That was my impression. I can't tell how I got this impression."

This witness says he took the acknowledgment of John Jarrell to the deed. He says: " I read the deed to him and asked him if he acknowledged it, and he said he did. Nothing further was said about the deed that I remember."

Lewis Hunter the justice who took Mary Jarrell's acknowledgemnt to the deed says he explained the deed to her as conveying the land from the store down to the cross-fence; that Leftridge Jarrell told him to read the deed to her; that he was close enough to hear the explanation but does not know, whether he heard it or not.

I have not pretended to refer to all the evidence but only to the strongest parts of it; and I must say that to my mind

the preponderance of the evidence is, that there was a mistake in the deed. But we can not decide this case on a preponderance of evidence. No weight of preponderant evidence would be sufficient; the mistake would have to be proved beyond a reasonable doubt. It would have to be proved beyond a reasonable doubt, that Leftridge Jarrell bought of John Jarrell only so much of the farm, as was situated above the cross-fence; that that was the contract between the parties, and the deed by mistake was made to include the whole farm. The proof must be such as will strike all minds alike as being unanswerable and free from reasonable doubt. The distinction here attempted to be made in regard to the measure of proof is much the same, as exists between civil and criminal cases; or that distinction which is expressed by a fair preponderance of evidence and full proof. (1 Sto. Eq. Jur. sec. 157.) The evidence in this cause does not leave the, case free from reasonable doubt. It would be exceedingly unsafe to disturb the solemn acts of the parties, as they appear in their title-deeds, by even as strong evidence as appears in this record. Better that injustice be done in a single instance, than that a rule be relaxed, which is the very foundation and only safegard to the rights of property.

The decree of the circuit court is reversed with costs to the appellant; and the deed from John Jarrell and wife to Madison Jarrell dated January 5, 1880, is set aside and annulled as a cloud on the title of Leftridge Jarrell; and the plaintiff must recover his costs in the circuit court expended.

Reversed.