WEIRTON SAVINGS & LOAN COMPANY, *a corporation*

*v.*

PATSY CORTEZ

(No. 13109)

Submitted September 26, 1972.   Decided January 15, 1974.

Rehearing Denied March 25, 1974.

*McCamic & McCamic, Jeremy C. McCamic* for appellant.

*Petroplus, Bailey, Byrum & Hesse, A. W. Petroplus* for appellee.

HADEN, JUSTICE:

This is an appeal by Weirton Savings & Loan Company from a final order of the Circuit Court of Hancock County, refusing to set aside a judgment entered on a jury verdict in favor of Patsy Cortez, who was the defendant in the civil action below, which had been instituted to effect a money recovery for nonpayment of a promissory note executed by Cortez.

At the trial, the loan company proved documentary evidence which included the loan application, the promissory note, the loan voucher for the proceeds of the loan, and the loan payment record. This evidence was introduced by an executive officer for the loan company who had taken no part in the original transaction, but who

merely testified as to the correctness of the records and their contents. The uncontradicted proof of the loan company .was that on April 17, 1962, Patsy Cortez executed a note in the amount of three thousand, seven hundred fifty dollars ($3,750.00), payable to the loan company as holder, in return for which a check was drawn on the loan company in the amount of three thousand, five hundred dollars ($3,500.00), payable to Cortez. This check was endorsed by Cortez and by a Tony Leon, who was paid the proceeds by the loan company. The proof also demonstrated that only two payments in amounts of fifty-two dollars and fifty cents ($52.50) were made on the loan balance and these payments were made by a person other than Cortez. By the terms of the note, the loan then became in default. After demand was made by the loan company on Cortez to pay the note, and upon his refusal, this civil action was instituted. At the date of the trial there was due and owing on the note the amount of four thousand, five hundred three dollars and fifty-one cents ($4,503.51).

The sole defense offered by Cortez in the trial was that the note sued upon had been conditionally delivered by him to the loan company. Cortez testified that he had agreed to execute the note in 1962 as an accommodation to a friend, Anthony Leon who was to be the principal borrower, on the condition that Leon and a John Camilli, a second accommodation maker, also were to sign the note. Leon and Camilli did not sign the note.

From further uncontradicted testimony introduced by Cortez, it appears that after Cortez agreed to sign the note for his friend Leon, he went to the Weirton Savings & Loan building, and by prearrangement asked to see Mr. Lydick, an officer of the loan company who was to handle the transaction. At the bank, Cortez was informed by the receptionist that Mr. Lydick was not available and was referred to a Mr. Higenbotham, another executive of the loan company. After Cortez told Higenbotham of the purpose of his visit, Higenbotham

told Cortez that he knew all about the transaction and produced papers showing Cortez where to sign.

According to Cortez, he signed all the papers without reading them but noticed that several, including the note, were in blank, or were otherwise incomplete at the time he affixed his signature to the instruments. Before Cortez signed the papers he inquired as to the whereabouts of Tony Leon and John Camilli and he testified that he informed Higenbotham that "I would sign the note with the understanding that Anthony Leon and John Camilli would be in there to sign this note." Cortez also inquired as to the absence of the signatures of these two men and was told by Higenbotham that everything was taken care of and arranged. Cortez elaborated upon Higenbotham's statements to him to the effect that Leon and Camilli would be in to sign the note and that Cortez didn't have to worry because they would be in to take care of their part. Higenbotham attempted to persuade Cortez to deliver the loan proceeds check to Leon, but Cortez declined.

On cross-examination, Cortez admitted that he had previously given deposition testimony to the effect that he did not recall making any condition on the note prior to affixing his signature to it. Cortez also admitted that the information on the loan papers was correct with regard to his wife's name, his employment, his income, the worth of his real estate, and other matters relating to credit.

Other testimony from Cortez showed him to be a retired millworker, who had little or no acquaintance with financial transactions involving credit or banking. He had no checking account or other account with a banking institution and paid all of his bills in cash. He had never borrowed from banks or other lending institutions. In fact, he had not financed the construction of his home, testifying that he had built the same on an intermittent basis by subletting contracts, paying cash for each small part of the construction completed. He also testified that

he had never been in the Weirton Savings & Loan building at any time prior to the transaction involved in this appeal and was there only at Leon's request.

The loan company did not introduce the testimony of either Lydick or Higenbotham, the two loan officers who conducted the transaction in 1962. Apparently both had left the employ of the loan company and were not subpoenaed to give testimony in the trial. No rebuttal of the evidence introduced by Cortez of conditional delivery was made by the lending institution.

The case was submitted to the jury on a charge which, in summary, instructed it that the loan company had proved the execution of a loan, a distribution of proceeds in accordance with the terms of the loan, a default in the loan payments, and Cortez's liability for the obligation as an accommodation maker. Based on the foregoing, the court told the jury that if it also believed there was no condition precedent to the efficacy of the loan contract, then the verdict would have to be for the plaintiff loan company.

Then, stating the defense offered by Cortez, the court charged that if, however, the jury believed that the note was executed by Cortez and delivered to the loan company as holder on the condition that it was not to be effective unless and until it was also signed by Leon and Camilli, and if the jury further believed this condition to be a part of the loan transaction, then its verdict should be for the defendant.

In summary, the court said that the issue to be determined by the jury was whether a preponderance of the evidence demonstrated the presence or the absence of conditional delivery of the note sued upon.

The jury returned a verdict in favor of the defendant Cortez and the court entered judgment thereon. Upon consideration of a Rule 50 (b) motion to set aside the judgment and award a new trial or enter judgment in favor of the plaintiff loan company, the trial court

affirmed its previous ruling by the order which resulted in this appeal.

Although the Uniform Negotiable Instruments law has since been replaced and superseded by the passage of the Uniform Commercial Code, the former code provisions were applied in the case disposition by the trial court and, insofar as defining the relationship of the parties and the efficacy of the loan transaction, the Negotiable Instruments law is the technical commercial law applicable on appeal. See West Virginia Code, Chapter 46, Article 1, Section 101, *et seq.* (Michie 1966) and statutory history annotated therein.

The appellant contends here that the trial court committed reversible error in its refusal to direct a verdict for it. After making proof of the promissory note duly signed and regular on its face and demonstrating that the note was in default by its terms, coupled with the refusal of the party who signed it to pay the obligation, the loan company says the court should have concluded the case in its favor without regard to the defenses asserted by Cortez.

As to that contention we note the parties in this case are the immediate parties to the execution of the note sued upon. Consequently, this Court is not confronted with the more complex problem of determining what, if any, defenses may be asserted against a holder in due course. Rather, we are dealing here with a maker who, under these facts, is an accommodation party and, secondly, with a mere holder for value who would be subject to any valid defense alleged and proved by the maker.

On a matter preliminary to its instant contention, the loan company makes particular moment that Cortez executed the note as an accommodation maker. The Negotiable Instruments law defines an accommodation party *inter alia,* as one who has executed an instrument

". . . without receiving value therefor, and for the purpose of lending his name to some other person." *Code* 1931, 46-2-6 (NIL). Other than for technical classification purposes, we need not be concerned with the question of whether Cortez is an original maker or an accommodation party. In either event he would be primarily liable to a holder for value on a defaulted note, if the note was proved to have been properly executed and delivered in the first instance. *Marshall County Bank v. Fonner,* 113 W.Va. 451, 168 S.E. 375 (1933).

Was the trial court correct in refusing to grant the loan company's motion for a directed verdict? In giving consideration to this issue, we recognize the general rule that where the instrument is no longer in the possession of the maker it shall be presumed to have been effectively delivered until the contrary is proved. *Code* 1931, 46-1-16 (NIL). *Commercial Security Company v. Donnald Drug Company,* 110 S.C. 353, 96 S.E. 529 (1918); *Pate v. Brown,* 85 N.C. 166 (1881). See also, *Irvin v. Harris,* 182 N.C. 647, 109 S.E. 867 (1921). However, where it is alleged and proved that an instrument was incomplete when it left the hands of the maker, and where the holder completes the instrument in a manner materially unauthorized by the maker, ineffective or conditional delivery is a valid defense to an action on the note. *Code* 1931, 46-1-15, 16 (NIL). Such conditions precedent to the effective delivery of a document are well recognized in the general law of contracts. 17 AM. JUR. 2d *Contracts* §§ 24, 71 (1964), and cases cited therein. They are likewise recognized by commercial law as respects negotiable instruments. As between immediate parties, delivery of a negotiable instrument may be subject to a condition precedent—the contemplated completion, which is provable as a defense to an action on the note. *Clark v. Miller,* 148 Va. 83, 138 S.E. 556 (1927); *Crafts v. Broadway National Bank,* 142 Va. 702, 128 S.E. 364 (1925); *Continental Trust Company v. Witt,* 139 Va. 458, 124 S.E. 265 (1924); *Robertson v. Virginia National Bank,* 135 Va. 166, 115 S.E. 536 (1923).

For these reasons, we affirm the correctness of the trial court's refusal to take the case from the jury.

A second contention of error made by the loan company is that Cortez did not present a sufficient quantum of evidence warranting submission of the defense of conditional delivery to the jury.

In reviewing the weight and sufficiency of the evidence and the soundness of the jury's verdict we are directed to the following applicable principles. Where a case has been fairly submitted to a jury, and a verdict fairly rendered, it should not be set aside unless manifestly wrong and unjust, or unless the verdict is plainly not warranted by the evidence. *Miners' & Merchants' Bank v. Gidley,* 150 W.Va. 229, 144 S.E.2d 711 (1965). When the basic facts of a case, though undisputed, are such that reasonable men may draw different logical conclusions from them, it remains the peculiar and exclusive province of the jury, and not that of a trial or appellate court, to weigh and resolve the factual questions. *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973); *Barker v. Hawkins,* 153 W.Va. 828, 173 S.E.2d 79 (1970); *Kendall v. Allen,* 148 W.Va. 666, 137 S.E.2d 250 (1964); *Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963). In an appeal by one who seeks reversal of a judgment entered on a jury verdict, the reviewing court is inhibited by the rule that not only must the evidence of the prevailing party be most favorably considered, but also, all conflicting testimony and all inferences that may be drawn therefrom must be resolved in favor of the prevailing party. See, *Levine v. Peoples Broadcasting Corp.,* 149 W.Va. 256, 259, 140 S.E.2d 438 (1965).

We do not find merit in the assertion by the appellant that Cortez did not adduce sufficient evidence to be entitled to consideration by the jury. The evidence of appellee as to the circustances concerning the execution of the note and other loan papers, is uncontradicted. The loan company made no effort to rebut the facts offered by Cortez with testimony of its own former officers, who, if

present, could have testified more favorably in support of its case. We believe there to have been ample uncontroverted testimony put before the jury on the issue of conditional delivery which would warrant its verdict for Cortez.

The most serious question presented by appellant's assignment of errors is that Cortez's evidence of conditional delivery was inadmissible, being incompetent as a violation of the parol evidence rule.

In support, the loan company relies strongly upon two cases decided by this Court which recognized and applied the general rule:

> " '*A contemporaneous oral agreement,* which contradicts, adds to, alters, enlarges or explains a complete written agreement between the same parties, *or varies its legal effect,* when such written agreement is clear and unambiguous, *is void and of no binding force and effect.*' " (Emphasis in original.) *Wyckoff v. Painter,* 145 W.Va. 310, 320, 115 S.E.2d 80, 87 (1960); see also, *Lightner v. Lightner,* 146 W.Va. 1024, 124 S.E.2d 355 (1962).

Consequently, appellant asserts that evidence of the oral condition is invalid and, as such, is inadmissible to contradict the unambiguous and complete promissory note.

On the other hand, Cortez, while recognizing the general rule, asserts that in its application to particular factual situations the rule is subject to exceptions. One such recognized application is that it is competent to show that a writing was not to become binding until the performance of some condition resting in parol. Further, that parol evidence is always admissible to show additional facts or independent facts contemporaneously agreed upon and not inconsistent with or contradictory of the written contract. See, *Titchenell v. Jackson,* 26 W.Va. 460, 467 (1885); 7 M.J. *Evidence* §§ 153, 154 (1949).

The appellee cites in support of his proposition the recent case of *Miners' & Merchants' Bank v. Gidley, supra,* in which this Court recognized that parol evidence may be introduced by a party to demonstrate what caused him to obligate himself to the written contract. There the Court held admissible oral testimony that an automobile seller would not enter into a contract with an infant unless the purchaser's father signed as principal. In that case, syllabus point 2 states the proposition concisely:

> "Parol evidence is always admissible to show the nonexistence of a contract or to show the conditions upon which a writing is to become effective as a contract."

The law of the *Gidley* decision is recognized in the vast majority of American jurisdictions:

> "It is now the general rule that parol evidence is admissible to show conditions precedent which relate to the delivery or the taking effect of a written instrument. Such evidence does not constitute an oral contradiction or variation of the written instrument, but goes to the very existence of the contract and tends to show that no valid and effective contract ever existed, at least not until the fulfilment of the condition." 30 AM. JUR. 2d *Evidence* § 1038 (1967); *id.,* footnotes 11, 12 and 13 for a thorough citation of case support.

In accord with the general rule, see also RESTATEMENT, CONTRACTS § 241. The West Virginia Annotations to this RESTATEMENT, prepared by Judge Donley, refer us to *Securities & Investment Corp. v. Heron,* 88 W.Va. 552, 107 S.E. 179 (1921) and *Brown v. Cabell,* 111 W.Va. 186, 161 S.E. 438 (1931). Both cases apply and support the rule that parol is admissible to explain and prove a conditional delivery of a written contract.

The facts of the *Lightner* and *Wyckoff* cases are readily distinguishable from those of the *Gidley* and the case on appeal. In the former, a party sought to employ the use of parol evidence to contradict the unambiguous terms

of the written contracts. In the latter, parol was properly used to prove a contemporaneous condition precedent to the efficacy of the written contracts, *not inconsistent with the writings*. Parol which explains or supplements the written contract is competent and admissible.

Under the proof adduced in this case by both parties, the existence of a conditional execution or conditional delivery of the note in question is unrefuted by the written contract itself or by any positive evidence introduced by the loan company. The appellant failed to rebut Cortez's testimony that he executed the note when it was incomplete and that it would be completed by the additional signatures of Leon and Camilli as principal borrower (maker) and accommodation party, respectively. Inasmuch as the loan proceeds were paid to Tony Leon and in that payments on the loan were made by Leon or others for him, and not by Cortez, the oral testimony of conditional delivery is compatible with and logically explanatory of the documentary evidence of the loan transaction, the testimony regarding the distribution of the proceeds, and the payment record of the loan obligation.

For these reasons we apprehend no error in the judgment of the Circuit Court of Hancock County, and it is therefore, affirmed.

*Affirmed.*

Judges Carrigan and Kessel participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Justices Sprouse and Neely did not participate in the consideration or decision of this case.