399 S.E.2d 863

**CARDINAL STATE BANK, NATIONAL ASSOCIATION**

v.

**Kenneth M. CROOK and Mildred Crook Taylor.**

**No. 19486.**

Supreme Court of Appeals of West Virginia.

Nov. 29, 1990.

Lee H. Adler, Beckley, for Kenneth M. Crook and Mildred Crook Taylor.

David T. Kennedy, Kennedy, Vaughan & Patterson, Beckley, for Cardinal State Bank, National Ass'n.

PER CURIAM:

Cardinal State Bank instituted suit against Kenneth M. Crook and his mother, Mildred Crook Taylor (hereinafter collectively, the Crooks) on an $86,000 note that was part of the Bank's financing of Crooks' purchase of a grocery store. The circuit court, citing the parol evidence rule, barred the Crooks from presenting evidence about the circumstances of the note and directed a verdict in favor of the Bank in the note's outstanding balance. On appeal, the Crooks allege that the Bank fraudulently induced them to sign a short-term note. We find that the jury should have deter-

mined the factual question concerning the alleged fraud and, therefore, we reverse the circuit court and remand the case for further proceedings.

Because the previous owner of the grocery store defaulted on a joint participation loan from the Bank and the Small Business Administration (SBA), the Bank and SBA decided to foreclose.[1] Before the foreclosure sale, Mr. Crook became interested in buying the store and allegedly conditioned his purchase upon the Bank's requiring no down payment and providing affordable monthly payments. By letter dated March 1, 1984, Mr. Crook submitted a $180,000 offer for the store, "subject to proper financing."

William Loving, Jr., the Bank's vice-president, testified that on March 8, 1984, the day before the foreclosure sale, he telephoned Mr. Crook to inform him that the Bank had rejected his offer and to ask if Mr. Crook wanted to bid at the foreclosure sale. Mr. Loving maintains that he explained the procedures and terms of the public auction to Mr. Crook and also indicated that long-term financing of the store might be available from the SBA. Because Mr. Crook indicated that he wanted to bid at the auction, Mr. Loving, by telephone poll of the Bank's loan committee, arranged a $70,000 letter of credit to finance the down payment. Mr. Loving, again, telephoned Mr. Crook and told him that financing for his bid was arranged.

Although Mr. Crook agrees that on March 8, 1984, he received two telephone calls from Mr. Loving and was informed of the public auction procedures, Mr. Crook maintains that he was not informed of the Bank's refusal to provide long-term financ-ing. Mr. Crook testified that Mr. Loving told him that "everything was go" because the loan committee was "willing to go along with me and finance a package for this store." Mr. Crook understood from the telephone conversations that the Bank's financing would be long-term.

On March 9, 1984, Mr. Crook's bid of $186,000 was accepted.[2] The bid included $151,000 for the real property and $35,000 for the fixtures and equipment. Mr. Crook was given immediate possession and invested about $20,000 to open the store on May 1, 1984. On May 22, 1984, the Bank presented Mr. Crook with an $86,000 lump-sum, ninety-day renewable note, for the $51,000 down payment on the real property paid to the SBA and $35,000 for the personal property.[3] The Bank sued on a renewal of the $86,000 note.

When the note was given to Mr. Crook, he immediately questioned the terms because he understood that the Bank was to provide long-term financing. Mr. Loving indicated that long-term financing might be arranged. However, because of his substantial investment in the store, Mr. Crook felt that he had "to sign anything" even though "this was not the deal we had struck."

Although the record contains extensive information about various attempts, either directly with the Bank or in conjunction with the SBA, to arrange long-term financing, for today's decision it is sufficient to note that long-term financing was not arranged. The Crooks paid interest every ninety days on the $86,000 note until they defaulted on the renewal note dated February 10, 1986.[4] The Bank instituted suit on the outstanding balance—about $99,000.

1. Although the Bank had an appraisal of the grocery store that valued the building at $196,000 and the equipment at $10,000, by letter dated February 21, 1984, the Bank advised the SBA that at the foreclosure sale the Bank would bid about $150,000 for the building and $6,000 for the equipment.

2. Mr. Loving testified that at the foreclosure sale he explained the terms of the auction to Mr. Taylor, Mr. Crook's father-in-law, who submitted Mr. Crook's bid.

3. Mr. Crook also signed a $100,000 note for the real estate payable to the SBA, secured by a deed of trust and requiring two payments of $50,000 on the first and second anniversary of the sale. Although Mr. Crook and his mother, Mrs. Taylor, made only one partial interest payment on the $100,000 note, the $100,000 note was satisfied by a foreclosure sale.

4. The $86,000 note was renewed and signed by Mr. Crook until he was injured in the Spring of 1985 and then in July 1985 his mother, Mrs. Taylor, signed the renewed note. Both Mr.

Mr. Crook and Mrs. Taylor allege that the Bank fraudulently enticed them into signing the note.[5] By pre-trial order, the circuit court, citing the parol evidence rule because the note was complete and unambiguous, excluded testimony concerning the negotiations about long-term financing that took place before the note was signed.[6]

At trial, the record was vouched for appeal to preserve the evidence. At the close of evidence, the circuit court directed a verdict in favor of the Bank in the amount of the note, less principal paid, plus interest.[7] The Crooks appeal asserting that the jury should have considered the evidence because the facts showed a condition precedent and fraud, which are exceptions to the parol evidence rule.

## I.

We have long recognized the general rule that parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous written instrument. In Syllabus Point 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947), we stated the parol evidence rule as:

Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

*Accord* Syllabus Point 3, *Tri–State Asphalt Products, Inc. v. McDonough Co.*, 182 W.Va. 757, 391 S.E.2d 907 (1990); *Glenmark Assoc. v. Americare of W.Va.*, 179 W.Va. 632, 371 S.E.2d 353, 356 (1988); *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980); Syllabus Point 1, *North American Royal Coal Co. v. Mountaineer Developers, Inc.*, 161 W.Va. 37, 239 S.E.2d 673 (1977). The parol evidence rule also applies to notes. *See Tabler v. Hoult*, 110 W.Va. 542, 158 S.E. 782 (1931) (refusing to admit parol evidence of an alleged agreement that the payee was not required to pay the note); *Capital City Bank v. Foster*, 112 W.Va. 520, 165 S.E. 802 (1932) (refusing to admit parol evidence of an alleged contemporaneous oral agreement changing the time of payment); *West Virginia Mack Sales Co. v. Brown*, 139 W.Va. 667, 81 S.E.2d 103 (1954).

However, we have recognized "the general rule that parol evidence is admissible to show conditions precedent which relate to the delivery or the taking effect of a written instrument." *Hamon v. Akers*, 159 W.Va. 396, 222 S.E.2d 822 (1976) (quoting 30 Am.Jur.2d Evidence § 1038); *Weirton Savings and Loan Co. v. Cortez*, 157 W.Va. 691, 203 S.E.2d 468 (1974); *Miners' and Merchants' Bank v. Gidley*, 150 W.Va. 229, 144 S.E.2d 711 (1965). In *Hamon*, the parties agreed that there would be no conveyance without the release of a particular deed of trust. We held that the evidence demonstrated a condition precedent and allowed the admission of parol evidence. *Hamon supra* 159 W.Va. at 400,

---

Crook and Mrs. Taylor signed the subsequent notes including the February 10, 1986 note. Mrs. Taylor had a half interest in the grocery store.

**5.** Mr. Crook and Mrs. Taylor counterclaimed alleging fraud, negligence and a breach of an implied duty to proceed in good faith and to deal fairly. The circuit court, by pre-trial order, rejected the claim for a breach of an implied duty to proceed in good faith and to deal fairly because the loan was evidenced by a note and a deed of trust. The Crooks did not appeal that part of the circuit court's decision.

**6.** The Crooks alleged that as a result of the Bank's failure to provide long-term financing,

their wholesale business was damaged because the store's bill, in excess of $100,000, was not paid. By pre-trial order, the circuit court correctly excluded from Crooks' counterclaim damages to the Crooks' wholesale business because the damages were too attenuated. *See* Syllabus Point 2, *Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro*, 158 W.Va. 708, 214 S.E.2d 823 (1975), stating the rule that damages "are those as may fairly and reasonably be considered as arising naturally ..." from the breach as to have been within the contemplation of the parties.

**7.** *See Wayne County Bank v. Hodges*, 175 W.Va. 723, 338 S.E.2d 202 (1985), concerning damages involving a note.

222 S.E.2d at 825–26. *Hamon* also requires that the condition precedent not be inconsistent with the instrument. *Id.* 159 W.Va. at 401, 222 S.E.2d at 826; *Weirton Savings, supra* 159 W.Va. at 700, 203 S.E.2d at 474. "Where the alleged condition precedent is inconsistent with the written instrument, parol evidence thereof is inadmissible." 32A C.J.S. Evidence § 935 (1964).

■ In the present case the Crooks' note is inconsistent with the alleged condition precedent because the note clearly specifies that the payment was to be made in ninety days. Although parol evidence is admissible to show conditions precedent, the evidence of long-term financing in this case is not a condition precedent. Therefore, the Crooks must rely on their claim of fraud to have parol evidence admitted; thus, the Crooks' final issue is whether the circuit court erred in refusing to let the jury consider the evidence of fraud.

## II.

Fraud, together with a showing of illegality, duress, mistake, or insufficiency of consideration are among the well recognized exceptions to the parol evidence rule. In Syllabus Point 2, *Collia v. McJunkin,* 178 W.Va. 158, 358 S.E.2d 242, *cert. denied* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 357 (1987), we stated:

"Except in cases of fraud or mistake, parol evidence cannot be admitted to vary, contradict, add to or explain the terms of a complete and unambiguous lease, by proving that the agreement of the parties was different from what it appears upon the face of the lease." Syllabus Point 2, *Gwinn v. Rogers,* 92 W.Va. 533, 115 S.E. 428 (1922).

*Kanawha Banking & Trust, supra; Traverse Corp. v. Latimer,* 157 W.Va. 855, 205 S.E.2d 133 (1974); *Troll v. Carter,* 15 W.Va. 567 (1879).

■ Exceptions, such as fraud, must be established by clear and convincing evidence because generally, a complete, unambiguous written instrument is the highest and safest evidence of the parties' agreement. *Hartmann v. Windsor Hotel Co.,* 136 W.Va. 681, 68 S.E.2d 34 (1951); 7B M.J.

Evidence § 146 (1985). In Syllabus Point 5, *Calhoun County Bank v. Ellison,* 133 W.Va. 9, 54 S.E.2d 182 (1949), we stated:

Allegations of fraud, when denied by proper pleading, must be established by clear and convincing proof.

Syllabus Point 5, *Tri–State, supra; Rosin Coal Land Co. v. Martin,* 81 W.Va. 33, 94 S.E. 358, 360 (1917) ("fraud ... must be such as would entitle him to relief in a court of equity"); *Koen v. Kerns,* 47 W.Va. 575, 35 S.E. 902 (1900); *Fishack v. Ball,* 34 W.Va. 644, 12 S.E. 856 (1891); *Jarrell v. Jarrell,* 27 W.Va. 743 (1886); *Allen v. Yeater,* 17 W.Va. 128 (1880).

■ In Syllabus Point 1 of *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981), we enumerated the following elements of fraud:

The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 [738] (1927).

Syllabus Point 4, *Tri–State, supra; Rockley Manor v. Strimbeck,* 181 W.Va. 313, 382 S.E.2d 507 (1989); *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988); *Romano v. New England Mutual Life Ins. Co.,* 178 W.Va. 523, 362 S.E.2d 334 (1987).

■ The Crooks allege that the Bank fraudulently induced them to sign a note that did not accurately reflect their agreement. According to Mr. Crook, the Bank wanted to sell him the store at an inflated price to limit the Bank's losses on the previous loan. Then the Bank failed to show him the note until he had spent about $20,-000 improving the store. By encouraging him to invest in the store, Mr. Crook alleges that the Bank trapped him. Finally the Crooks maintain that with long-term financing their business would have been successful.

Because of the pre-trial order and the directed verdict, the Crooks were unable fully to present the facts showing fraud to the jury. We find that there is a genuine issue of material fact concerning the alleged fraud that precludes a directed verdict. In Syllabus Point 1 of *Jenkins v. Chatterton*, 143 W.Va. 250, 100 S.E.2d 808 (1957), we stated:

> "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767.

Syllabus Point 7, *Tri–State, supra;* Syllabus Point 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978).

When the evidence is viewed in light most favorable to the Crooks, we find that the Crooks presented sufficient evidence of fraud to allow consideration by the jury. On remand the circuit court should allow the jury to consider the Crooks' evidence of fraud.

For the above stated reasons, the judgment of the Circuit Court of Raleigh County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

NEELY, Chief Justice, dissenting:

The gravamen of the Crooks' allegation of fraud is that lack of long-term financing bankrupted them. I have a hard time seeing how long-term financing, which requires payment of interest *and* principal, would have saved the Crooks' business from bankruptcy, when short-term financing, which requires only interest, did not. Mr. Crook estimated that with long-term financing, his payments would have been about $2,000 to $2,500 per month. The record shows that the Crooks' interest payments under the short-term note averaged below $1,600 per month. No hurt, no foul! I would affirm the circuit court.