UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BMS NATURAL RESOURCES,
INCORPORATED, a West Virginia
Corporation,
Plaintiff-Appellant,

v.

No. 94-2251

KRUPP LONRHO MINING CORPORATION,
a Delaware Corporation, a wholly
owned subsidiary of Krupp
Industries of West Germany,
Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-94-306)

Argued: October 30, 1995

Decided: January 8, 1996

Before MURNAGHAN, HAMILTON, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Polan Meyer, MEYER & FORD, Charleston,
West Virginia, for Appellant. Joshua Israel Barrett, DITRAPANO &

JACKSON, Charleston, West Virginia, for Appellee. **ON BRIEF:** John Einreinhofer, MEYER & FORD, Charleston, West Virginia, for Appellant. Rudolph L. DiTrapano, DITRAPANO & JACKSON, Charleston, West Virginia; Terry Myers, HERZFELD & RUBIN, P.C., New York, New York, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

BMS Natural Resources, Inc. ("BMS"), the plaintiff-appellant, entered into a coal sales contract with defendant-appellee Krupp Lonrho Mining Corporation ("KLM") in which BMS agreed to sell and KLM to buy 40,000 tons of coal each month for five years. The contract contained a condition precedent--KLM's Board of Directors had to approve the contract for it to become operative. The instant appeal turns on whether the requirements of the condition precedent in the coal sales contract were met. For the following reasons, we find that the condition precedent was not met and affirm the district court's grant of summary judgment in favor of KLM.

I

In 1990, a German company, Krupp Energiehandel GmbH, formed a wholly owned subsidiary--KLM, a Delaware corporation--in order to purchase coal in the United States. KLM opened offices in Michigan, and Gerald Berger, a Michigan resident, became President and a member of the KLM Board of Directors. KLM's By-Laws required Berger to obtain prior approval from another Board member, Andre Venter, before entering into any contracts. The By-Laws further required that all contracts be approved by KLM's Board of Directors and that certain contracts be approved by Krupp Energiehandel.

2

In 1991, the President of BMS, Roger Ball, and the President of KLM, Berger, entered into negotiations that ultimately resulted in the two men executing a coal sales contract in which BMS agreed to sell and KLM to buy 40,000 tons of coal each month for five years. Throughout the negotiations Berger made clear that any contract was subject to the approval of KLM's Board.

Initially, in the early stages of negotiation, the proposed contract did not include a condition precedent requiring Board approval by KLM because it was expected that the Board would approve the contract prior to its final execution. A letter Berger attached to a draft contract prepared in late October 1991 explained the contemplated schedule. The letter, dated October 29, 1991, states that Berger will present the contract to the KLM Board before November 15 for approval, that BMS will secure financing for the deal, and finally, that Berger will execute the agreement with Board approval at the proposed closing on November 21, 1991. The October draft contract, therefore, contained no condition precedent requiring the approval of KLM's Board because the Presidents planned to submit a final draft to the KLM board prior to execution of the contract.

The October schedule, however, was not met because BMS could not demonstrate that it had the requisite financing in place for the deal until mid-December of 1991. Thus, the anticipated sequence of events changed: KLM's Board, it was understood, would now approve the contract after execution. As a result, when the final contract was signed on December 12, 1991, a new and additional provision--a condition precedent--was included as Article 19 in the final Agreement:

> This Agreement is subject to the approval of Buyer's Board of Directors which approval shall, if granted, be confirmed to Seller no later than January 15, 1992.

Thus, the December 12, 1991 Agreement anticipated that the KLM Board's approval or disapproval was to occur after the Agreement was signed.

The KLM Board did not approve the contract. On January 10, 1992, Berger informed Ball via telephone and confirmed in a letter to

3

BMS that the contract had been rejected by the KLM Board. BMS did not protest the rejection of the contract in writing to anyone at KLM. Instead, BMS filed a declaratory judgment petition in West Virginia State Court. On KLM's motion, the action was removed to the United States District Court for the Southern District of West Virginia. KLM filed a motion for summary judgment alleging that BMS had no basis for recovery on the contract because a clear and unambiguous condition precedent--the approval of KLM's Board--had not been met. The district court agreed and granted summary judgment. BMS has appealed that decision.

II

A. <u>Standard of Review</u>

We review the district court's grant of summary judgment under a <u>de novo</u> standard of review. <u>Henson v. Liggett Group, Inc.</u>, 61 F.3d 270, 274 (4th Cir. 1995). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where there are no genuine issues of material fact. Therefore, to defeat the district court's grant of summary judgment, BMS "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court must review the record in the light most favorable to the non-moving party.

B. <u>The Contract's Condition Precedent</u>

Here, although the parties executed the contract in West Virginia, the contract provided that Michigan law would govern any contractual disputes between the parties.**1** Under Michigan law, failure to satisfy a condition precedent in a contract precludes a cause of action for failure to perform the contract. <u>Christman Co. v. Anthony S. Brown</u>

_____

**1** Paragraph 17 of the contract provides:

> This Agreement shall be interpreted and construed in accordance with the laws of Michigan. Section headings have been inserted as a matter of convenience or reference only. They shall not affect the meaning or construction of any terms or provisions of this Agreement.

Dev. Co., 533 N.W.2d 838, 840 (Mich. App. 1995); <u>Kachanowski v. Cohen</u>, 9 N.W.2d 667, 668 (Mich. 1943). The December 12, 1991 contract contained a clear condition precedent--approval by KLM's board of directors. That condition was not met. Thus, under Michigan law BMS has no actionable claim.

BMS has contended on appeal, however, that it raised genuine issues of material fact as to whether the Board's approval was given as required by the contract. First, BMS has pointed to an October 29, 1991 letter from Berger stating that he would be signing the contract on behalf of KLM's Board. Second, BMS has argued that Berger represented orally that he had the Board's approval when he signed the contract, thus fulfilling the condition precedent. Neither of those assertions suffices to raise genuine issues of fact for trial.

As for the October 29 letter, it did state that Berger would sign the contract with the approval of KLM's Board. The October 29 letter, however, clearly and unambiguously applied to a draft contract that differed from the one which the parties ultimately signed on December 12, 1991. The letter was attached to a previous draft of the December 12 coal sales contract actually entered by the parties. The previous draft did not include the condition precedent, because at that time it was anticipated that the KLM Board would approve the contract before it was executed. The October 29 letter expressly contemplated a November 21 closing date, after the contract had been submitted to KLM's Board for approval and BMS had obtained financing for the deal. That sequence of events did not occur because of BMS's delay in obtaining financing. Thus, Berger's statement that he would sign the contract with the approval of KLM's board in the October 29 letter cannot be read to apply to the contract signed on December 12. Furthermore, the entire course of negotiations made clear that the approval of KLM's Board was necessary whether it was obtained prior to or subsequent to the signing of the contract.

BMS has also argued that Berger assured it that the provision containing the condition precedent was merely boiler plate and a mere formality. Where a contract is clear, unambiguous, and complete as to its terms, parol evidence, including both prior and contemporaneous oral statements, is inadmissible to vary the terms of the contract. <u>Cardinal State Bank v. Crook</u>, 399 S.E.2d 863, 866 (W. Va. 1990);

5

Kanawha Banking & Trust Co. v. Gilbert, 46 S.E.2d 225, 232-33 (W. Va. 1948); see also General Aviation, Inc. v. Cessna Aircraft Co., 703 F. Supp. 647, 641 (W.D. Mich. 1988), aff'd in relevant part, modified in part, 915 F.2d 1038, 1042 (6th Cir. 1990); Johnson v. Michigan Mut. Ins. Co., 454 N.W.2d 128 (Mich. App. 1989). [2] The extensive and detailed December 12, 1991 contract represents a complete agreement among the parties and, thus, precludes reliance on Berger's statements.

Finally and most importantly, the plain and unambiguous meaning of the contract stated that it must be approved by the Board, and that approval, if granted, would be confirmed no later than January 15, 1992. Under Michigan law, "[w]here the provisions of a contract are clear and unambiguous, the contract language is to be construed according to its plain sense meaning." Ditzik v. Schaffer Lumber Co., 360 N.W.2d 876, 880 (Mich. App. 1984) (per curiam). The plain and ordinary meaning of the contract's terms indicates that despite the Agreement, the KLM Board's approval was still to come. Thus, while KLM Board approval was perhaps anticipated, it had not already been granted when the Agreement was executed. BMS has contended that Berger acted for the KLM Board or had Board approval when he signed the contract on December 12, 1991. That is not, however, the equivalent of actual Board approval.[3] Board approval did not occur; therefore, there was no satisfaction of the condition precedent of KLM Board approval.

BMS has made two further arguments as to why summary judgment should not have been entered against it: (1) that no formal KLM

_____

[2] The question of whether the parol evidence rule is a rule of evidence or a substantive rule and, thus, whether the Michigan or West Virginia rule of parol evidence applies is not addressed by the parties. We decline to address it here, because under both Michigan and West Virginia law, the contemporaneous statements are inadmissible.

[3] Two letters also strongly suggest that Berger and Ball both understood that approval of KLM's Board was necessary. Shortly after the contract was executed, Berger wrote to the KLM Board to inform it that it had until mid-January to approve or reject the contract. In a subsequent letter, written on January 8, 1992, Berger also stated that Ball had called twice and was "most anxious" to know the Board's decision.

Board meeting occurred to reject the contract; and (2) that the contract did not specify how notification of approval or disapproval was to occur and, therefore, that Berger's representations could constitute approval. Those arguments merit little discussion. Although informally, a majority of the KLM Board rejected the contract. The contract did not call for a formal Board meeting. Additionally, the contract stated that "approval shall, if granted, be confirmed." That statement clearly required some act of the Board to confirm approval. No such act occurred. Thus, the condition was not met.

Accordingly, the district judge's grant of summary judgment to KLM is

<u>AFFIRMED</u>.

7